TRAVIS *v.* BARKHURST.

May Term,
1853.

TRAVIS
v.
BARKHURST.

As a general rule, surprise from unexpected evidence adduced by the adverse party, is not a sufficient ground for a new trial.

Replevin by *A.* against *B.* for a horse. On the trial, *B.* having proved that the horse came into his possession by a purchase from one *C.*, offered to prove a conversation between *C.* and himself soon after the trade occurred, in relation thereto. It was not shown that *C.* was the agent of *A.* when the sale to *B.* was made. *Held*, that the Court correctly refused to admit the evidence.

A witness for the defendant having testified at the trial to the general bad character of a witness for the plaintiff for truth and veracity, the latter, at the rising of the Court, assailed and beat him therefor. The counsel for the plaintiff was permitted to argue that the fact of such beating was an evidence of the credibility of the assailant. The Court instructed the jury, in effect, that what had been said by the plaintiff's counsel as to said attack was not in evidence, but was a matter of public notoriety, though not a matter properly before the jury; but that, in the opinion of the Court, a man who had the courage and will thus to meet a charge, was usually one who had such a sense of honor that he would not place himself in a position where a charge could be justly made, &c. *Held*, that the instruction was impertinent, and pernicious in its tendency, and ought not to have been given.

ERROR to the *Tippecanoe* Circuit Court.

PERKINS, J.—Replevin by *Barkhurst* against *Travis* for a bay mare. Pleas, the general issue, and property in the defendant. Issues of fact. Jury trial, and verdict for the plaintiff. Motion for a new trial overruled, and judgment on the verdict.

Monday,
May 30.

It is claimed that said judgment should be reversed:

1. Because of the refusal of the Circuit Court to grant a new trial on account of the defendant having been surprised by the testimony of certain of the plaintiff's witnesses. As a general rule, such surprise is not a sufficient ground for a new trial; and we see nothing in the record satisfying us that the Court erred in the present case in this particular. See *Graeter* v. *Fowler*, 7 Blackf. 554;—*Cummins* v. *Walden*, 4 *id.* 307;—and 2 Swan's Pr. 924, where the law can be found on this point.

2. Because of the refusal of the Circuit Court to permit the defendant to give certain evidence.

The mare replevied by the plaintiff, *L. Barkhurst*, got

into the possession of the defendant, *Travis*, through a purchase of her by him from one *Daniel Bugher*, who had her in possession; and on the trial said defendant offered to prove what he and said *Bugher* said about the trade soon after it had been consummated, but the Court would not permit him to do so.

Had it been proved that *Bugher* was acting in the trade as the agent of said *L. Barkhurst*, then his declarations "at the very time of the contract," would have been admissible in evidence as a part of the *res gestæ*. Without such proof, his declarations would have been mere hearsay. Story on Agency, p. 153.—*Caldwell* v. *Williams*, 1 Ind. R. 405.—*Bland* v. *The State*, 2 *id*. 608. If a man steal a horse and sell it, his declarations, even while having the property in possession, cannot, certainly, be given in evidence in bar of the right of the real owner. See *Collis* v. *Bowen*, 8 Blackf. 262.

3. Because the Court gave an erroneous instruction to the jury.

The defendant introduced testimony, on the trial, to impeach one of the plaintiff's witnesses, viz., *Nathan Barkhurst*. Several witnesses swore that his character was bad, and that they could not believe him on oath. The first one testifying to this effect, and whose testimony was given just before an adjournment of the Court, was *Charles Vanhorn*. He swore that he had "known witness *Barkhurst* a long time; was acquainted with his character for truth and veracity; it was bad, and, from that character, he would not be willing to believe him on oath; but he had not lived near him for three or four years, and did not know what his character for truth and veracity was at that time, in the neighborhood where he was living."

On the adjournment of the Court, said *Barkhurst* assaulted and beat witness *Vanhorn*, for giving the testimony above set out, and, in his closing address to the jury trying the cause, the counsel for the plaintiff was permitted to use the fact of such beating as an argument to show that said *Barkurst* was a credible witness; and, in charging the jury, the Court stated "that what had been

said by plaintiff's counsel as to the attack made by witness *Barkhurst* upon witness *Vanhorn*, was not in evidence, but was a matter of public notoriety, though it was not properly a matter before the jury; that in the opinion of the Court, a man who was guilty of a charge made against him of any kind, was not apt to resent the charge; but that when a charge of any kind was made unjustly and without cause, the party charged would probably resent the insult at once by a blow; that the man who had the necessary courage and will thus to meet a charge, was usually one who had so nice a sense of honor that he would not place himself in a position where a charge could be justly made."

The latter part of this instruction was impertinent and should not have been given. It was, also, calculated to influence and mislead the jury. It did not fairly represent the state of the case. It assumes, (for we must consider the instruction as applying to the present case), that *Vanhorn* had made a charge, and a false one, against *Barkhurst*, which justified him in inflicting personal violence upon the former, and left the impression on the minds of the jury that having done so, his testimony was entitled to credit, notwithstanding it had been impeached. But *Vanhorn* had made no specific charge against *Barkhurst*. He had testified to nothing but his general character in the community, and that, from that character, he could not believe him on oath; and we think the more reasonable inference from the fact of *Barkhurst* assaulting the first witness that thus testified is, that he was conscious of the truth of the testimony, and hoped, through the fear of personal violence, to deter others from confirming it.

The influence of instructions like the foregoing, would be pernicious, tending to turn courts of justice into scenes of violence; and they should never be given.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*R. Jones*, for the plaintiff.

*J. Pettit* and *S. A. Huff*, for the defendant.