JOSEPH ATKINSON, *Adm'r de bonis non, versus* WILLIAM CONNER.

Before a review will be granted on the ground of newly discovered evidence, the Court must be satisfied from the evidence introduced in support of the petition, that the evidence claimed as newly discovered could not have been obtained by diligent inquiry, prior to the trial.

So the Court must be satisfied of the fact of surprise, before it will grant a review upon that ground.

When, from the nature of the issue, a party has reasonable cause to expect that a certain point will be controverted, and when, by proper diligence, he might have obtained the testimony to substantiate the point, he cannot be said to be taken by surprise by the controverting testimony.

ON REPORT.

PETITION FOR REVIEW.

The petition was dated Oct. 15, 1857, and substantially alleged that, on July 5, 1856, Parker Sheldon, as administrator of the estate of Parker O. Sheldon, sued out his writ of trover against the respondent, to recover the value of certain logs therein described, which writ was duly entered in this county; and that, Parker Sheldon having deceased after the entry of the action, the petitioner was duly appointed administrator *de bonis non*, and appeared to prosecute; that the action came to trial at the March term, 1864; that the plaintiff's title to the logs in controversy was based upon a bill of sale thereof, dated Oct. 10, 1850, from one J. W. Larry to Parker Sheldon; that the defence rested mainly upon an unrecorded mortgage, dated April 6, 1850, from the same Larry to White & Norris, the respondent's vendors; that it became material to show that White & Norris received and retained possession under their mortgage, which was attempted by one William Lisherness, who testified that one Heald spoke to him, before leaving the woods, about driving for him, witness told Heald he would and did; that Larry wanted witness to drive, and said if Heald did not pay, he (Larry) would; that witness had charge of the logs; and that Larry said Norris would pay for driving; that he was never paid; that he had ten men on the drive.

The petition further alleges that White & Norris were defendants in interest in said action, and did defend it; that White testified that he arranged with Heald to drive the logs in the spring of 1850, whereas, in truth, Heald was not on the drive and had no part in it; that Larry drove the logs on his own account and hired a crew of men, among whom was one Quint, Grady, Gardner, Pressey, Wat. Lisherness and William Lisherness; that the verdict was for the defendant and final judgment was rendered thereon; that the testimony of Lisherness was material and wilfully false, as the petitioner has since ascertained; that the petitioner was thereby surprised, and had then no knowledge of any means of showing its falsity; that, since the trial, the petitioner has discovered new and material evidence, which is

set out in detail, together with the names of the witnesses by which he can prove it, and the reasons he has for knowing they will so testify.

The testimony, depositions, documents and admissions used in any trial of the cases, *Parker Sheldon, Adm'r,* v. *White & al.,* same, or *Atkinson, Adm'r,* v. *Wm. Conner, Atkinson, Adm'r,* v. *Bridge & al.,* and the printed reports of the evidence in the above cases, were put into the case, reserving certain rights of objection. And, upon so much of all the evidence as should be legally admissible under the stipulations of the report, the case was to be heard and decided by the full Court.

The remaining facts sufficiently appear in the opinion.

*Lancaster,* for the petitioner.

*J. S. Abbott,* for the respondent.

DICKERSON, J.—The original action was trover, brought July 5, 1856, by Parker Sheldon, administrator of Parker C. Sheldon, for a quantity of logs cut in Canada, in the winter of 1849 and 1850, and hauled into the north branch of Dead river, in this State.

Both parties claim title to the logs under one J. W. Larry; the plaintiff by bill of sale from said Larry to Parker Sheldon, dated Oct. 10, 1850, and the defendant, by an unrecorded mortgage from him, bearing date April 6, 1850.

On the sixth day of June, 1851, Parker Sheldon sold the logs to Parker C. Sheldon, at whose decease he was appointed his administrator. On the sixth day of Dec., 1855, Parker Sheldon, administrator, sold the logs to William Atkinson, who caused an action of trover to be brought for their value, in Sheldon's name. The case was tried at the March term, in the county of Kennebec, in 1858, and a verdict was rendered for the defendant. That verdict was set aside and a new trial was granted on account of the misdirection of the Judge in matters of law. *Sheldon* v. *Conner,* 48 Maine, 584. Parker Sheldon having deceased, Joseph Atkinson was appointed administrator *de bonis non.*

At the trial of the action, in March, 1864, a second verdict was rendered for the defendant. Exceptions and a motion for a new trial were filed, and the evidence was reported, but the Court overruled both the motion and exceptions, and judgment was rendered for the defendant.

At the August term, 1865, a petition for a review was filed and a hearing had at the following term in November. By agreement of parties, the case was submitted to the law Court on report, and the petition was denied at the May term, 1867.

The material question raised in the action sought to be reviewed was before the Court in 1853, on report, in *Sheldon* v. *White & al.*, 35 Maine, 233, and the Court held that there was no such proof of ownership in the plaintiff as would authorize him to maintain an action of replevin.

Again, the same question arose in the case of *Atkinson, Adm'r*, v. *White & Norris*, which was an action for all the logs, and came on for trial at the November term, 1865. A nonsuit was ordered upon the pleadings and agreed statement of facts, and exceptions were filed, but the Court overruled the exceptions, and rendered judgment for the defendants, at the December term, 1867.

So, also, in *Atkinson, Adm'r*, v. *Bridge & al.*, the same question was raised and a verdict was rendered for the defendants, which was set aside on exceptions to the ruling of the presiding Judge in excluding certain testimony.

After the lapse of eighteen years since the facts in this case transpired, with three verdicts and three judgments against him, and one refusal of this Court to grant a review of this identical action, the petitioner asks to have this controversy reöpened, and his claim reëxamined on the alleged ground that he was taken by surprise at the trial, through certain false testimony which he had not then the means of refuting, but which he now hopes to disprove by subsequent discovered testimony.

Such persistent and protracted litigation, it is believed, has few parallels in the history of jurisprudence in this

State; and, if there is any wisdom in the maxim *interest reipublicae ut sit finis lititium*, the present would seem to be a fit occasion to apply it, if this can be done consistently with the legal rights of the parties.

The petitioner alleges, as ground for review, that a witness, at the original trial, testified falsely to material facts against the petitioner; that the petitioner was taken by surprise at such testimony, and unable to prove its falsity at the trial, but that he has since discovered evidence which, with the evidence before known, is sufficient to satisfy the Court that said witness' testimony was false.

A new trial will not be granted on account of newly discovered evidence, when the party complaining, by proper diligence, might have discovered such evidence, and had it at the trial. The law holds parties to the exercise of due diligence in the preparation of their cases. It is not sufficient that a petitioner for a review or new trial affirms that, with all the diligence in his power, he could not have discovered the evidence sought to be made available; the Court must be satisfied from the evidence in the case, that such evidence could not have been discovered by diligent inquiry, before it will disturb the verdict. *Howard* v. *Grover*, 28 Maine, 97; *Hewey v. Nourse*, 54 Maine, 262; *State* v. *Verrill*, 54 Maine, 581.

The same principle requires that the Court should be satisfied of the fact of surprise, before it will grant a new trial on that ground. Otherwise, there would be no limit to litigation with an unscrupulous suitor but his own perverse will. When, from the nature of the issue, a party has reasonable cause to anticipate that the point to which certain testimony is applicable, will be controverted, and when, by proper diligence, such party might have obtained the testimony, claimed to be newly discovered, he cannot be said to be taken by surprise at the testimony thus introduced. The public welfare, as well as the interest of litigants, requires that suitors should prepare their cases with reference to all the probable contingencies of the trial. The law

affords no remedy for the consequences of neglecting this duty.   The same general principles regulate the discretion of the Court in granting writs of review.

The question in the original action, was whether possession of the logs was delivered to, and retained by Messrs. White & Norris, under the Larry mortgage.   If it was, the title was in the defendant who was their vendee ; if it was not, the title was in the plaintiff in interest who claimed under Larry's bill of sale to Parker Sheldon.

Who drove the logs in the spring of 1850, whether Heald, acting for White & Norris, or Larry in his own behalf, were questions pertinent to the issue, and might be expected to arise at the trial.

In order to show that Larry retained possession of the logs in the spring of 1850, the plaintiff, at the trial of the action, *Sheldon* v. *White & al.*, in 1853, introduced Harrison Stevens, as a witness, who testified that Larry paid him for carrying up men to drive logs for him in the spring of 1850, from the place where the logs in controversy were cut ; and this testimony of Stevens, by agreement of parties, is made a part of the case in the succeeding trials.   On the other hand, the defendants in that action, in order to show that they took and retained possession of the logs under the Larry mortgage, introduced the certificate of Goff M. Manter upon the back of the mortgage, made April 10, 1850, and setting forth that he had that day been on the logs and taken delivery of them according to the terms of the mortgage.   They also introduced the deposition of Manter to the same point.   This certificate and Manter's deposition are made a part of the case in the other actions for the logs.

At the same trial, in 1853, William Atkinson, plaintiff in interest in the case now before us, testified that he saw Larry in Canada, in March or April of 1850, where the logs were cut ; that Larry claimed them, and offered to sell them ; that Larry had lived in the county of Somerset since 1849, and was residing in North Anson at the time of the trial. Atkinson was a witness at all the subsequent trials, and tes-

tified at the trial of the original action, in 1864, that Larry drove the logs in 1850. Greenleaf B. White, one of the defendants in *Sheldon* v. *White & al.*, called by the defendant, at the trial in 1864, testified that he and his partner Norris arranged with Heald to drive the logs in the spring of 1850, and furnished him with supplies for that purpose.

It thus appears that the inquiry, who had the control of the logs in the spring of 1850, might not only be expected to arise, but actually did arise at every trial of this question; it had, indeed, come up before the law Court, and once before the jury, prior to the trial of the original action in 1864, and, in both instances, the plaintiff's evidence of title had been found insufficient.

William Lisherness, whose testimony is the cause of the alleged *surprise* of the petitioner, testified that Heald wanted him to drive the logs for him in the spring of 1850; that he drove them for him; that Larry wanted him to drive them, and said if Heald did not pay him, he would; that Norris would pay for driving. That this testimony was pertinent to the issue, and might be expected to be introduced, if known to the defendant, is unquestionable; that Lisherness had an opportunity to know who controlled the logs at that time is proved by the petitioner's witness Orcut; it also appears from the testimony of the plaintiff in interest, at the time of the original action in 1864, that Lisherness told him, in the winter of 1851, that he was on the drive. Moreover, the petitioner's newly discovered witness Orcut, testifies, that both he and Lisherness were carried on to the drive by the plaintiff's witness Stevens, who testified at the first trial of this question, in 1853, that he carried six men on to the drive for Larry that spring.

Upon inquiry of his witness Stevens, the plaintiff might have learned the names of the persons he carried on to the drive, and ascertained the facts from them. He not only neglected to do this, but also to call Lisherness as a witness, though he had long known that he was on the drive, and had reason to believe, as he has sworn, that he would testify

in his favor. And yet, after the lapse of more than seventeen years since the facts in the case transpired, with verdict after verdict, and judgment after judgment against him, he filed his petition for a review of the same question, on the ground that he was *surprised* at the testimony of Lisherness, and has *since* discovered the evidence of its falsity!

The alleged discrepancy between Lisherness' account of his connection with the drive and Atkinson's recollection of his statement of it is scarcely sufficient to discredit that account, when we consider the lapse of time, Atkinson's interest, and the corroborative evidence contained in the certificate on the mortgage, and the testimony of Manter and White, if it were necessary to consider the question of credibility. It would be an infraction of the principle that testimony should be reconciled, when it can reasonably be done, to regard Atkinson's recollection of Lisherness' account of the transaction, after a lapse of thirteen years, as necessarily irreconcilable with Lisherness' statement of it on the stand. The testimony of both witnesses may be substantially true. Atkinson's testimony is very brief, while Lisherness' is more extended and complete. Atkinson testifies that Lisherness told him that he helped Larry drive the logs and that Larry agreed to pay him. Lisherness testifies that Larry wanted him to drive and agreed to pay him if Heald did not, but he adds, that Heald wanted him to drive for him, and he did drive for Heald. It is not improbable that Lisherness related a part only of the transaction to Atkinson, and that the testimony may be reconciled upon the theory that Heald employed Lisherness, but that Larry, knowing Lisherness, and having an interest in the logs as mortgager, desired him to help run them and agreed to pay him if Heald should not do so.

The original plaintiff must have known that it might become material, at the trial, to show by whose authority the logs in controversy were driven in the spring of 1850. He was, therefore, bound at his peril to use diligence in pro-

curing testimony upon that point. By the exercise of such diligence he might have produced the same testimony at the trial that he claims to have since discovered. There is no evidence that he made any effort in that direction. According to well established principles of law, he is not entitled to a review, either on the ground that he has discovered new and material evidence since the trial, or of surprise at the evidence introduced against him. There is no other ground for a review.                    *Petition denied.*

APPLETON, C. J., WALTON, BARROWS and DANFORTH, JJ., concurred.

KENT, J., concurred in the result.