## EBENEZER C. BLAKE *vs.* JAMES C. MADIGAN *et al.*

### Aroostook, 1875.—September 5, 1876.

#### *New trial. Trial. Watercourse.*

A new trial will not be granted, on the ground of newly discovered evidence, when the party complaining, by proper diligence, might have discovered such evidence and had it at the trial.

When from the nature of the issue a party had reasonable cause to anticipate that the point, to which certain testimony introduced at the trial is applicable, would be controverted; such party is not entitled to a new trial on the ground that he was taken by surprise by the testimony thus introduced.

A reservation of water necessary and sufficient to carry two run of mill stones; *held,* a reservation of a quantity sufficient for the purpose with the machinery in actual or contemplated use at the mill at the time the reservation was made, and not restricted then or afterwards to such quantity as with improved machinery and facilities would perform the same work; *held,* also, to reserve an absolute right to the use of the quantity of water named; and to be a reservation of a fixed measure of power to be used for any purpose, and not confined to the grist mill.

A party has no right to an instruction upon an abstract legal proposition not raised by the evidence in the case.

J. P., owning a mill privilege on both sides of the stream "except the privilege of taking as much water from the dam as will be necessary for the use of the tan house so as not to injure the grist mill," conveyed to the plaintiff the privilege on the east side, "except what may be necessary and sufficient for carrying two run of mill stones on the west side, and also when not required for the use of the saw mills what may be necessary for such other machinery as may be erected on the west side," making no mention of reservation for the tan yard. In the trial of the action against J. P.'s representative for the unauthorized use of the water, there was no evidence as to the use of any water for a tannery; and the presiding justice declined to instruct the jury as requested by the plaintiff, "that as against the plaintiff

the defendants have not a right to water sufficient to carry two run of mill stones besides enough for the tannery, and that the defendants have no right to any water for the use of the tannery under the clause, 'such other machinery as may be erected on the west side of said creek,' the tannery having already been erected." *Held,* that the plaintiff had no ground for exceptions for this refusal, the questions not having been raised by the evidence. *Held,* also, that the first exception in the plaintiff's deed is an abstract quantity of water sufficient to carry two run of mill stones, and its use is not limited to the running of the grist mill, but it may be applied to a carding machine and cabinet shop. *Held,* further, that under the true construction of the deed the rights of the parties to the water of the creek are: 1, the defendants have a right to the use of a quantity of water sufficient to carry two run of mill stones, operated by the water wheels in use at the time the deed was made, for the use of their grist mill and any other machinery, (saw mills excepted,) on the west side of the creek; 2, the plaintiff has the right to use all the rest of the water of the creek, when required for the use of the saw mills, in process of construction when the deed was made, operated by the water wheels then in use for such purpose; 3, the defendants have the right to the use of the water of the creek for any machinery, (saw mill excepted,) on the west side of the creek, subject to the rights of the plaintiff as above defined.

ON EXCEPTIONS and MOTIONS of the plaintiff to have the verdict set aside as against evidence, and for a new trial on the ground of newly discovered evidence.

CASE for unauthorized use of water of the Meduxnekeag creek.

The plaintiff had title to a saw mill privilege with a right of water on the east side, the defendants to a grist mill privilege with right of water on the west side. The defendants used the water for other purposes than to run their grist mill. The plaintiff claimed that that use was unauthorized, also that they used more water in their grist mill than they were entitled to. The trial turned mainly on the construction of the deed from the Putnams to Kelleran, under which the plaintiff claimed, granting the land and mill privilege on the east side of Meduxnekeag creek "with the right and privilege of all the water of said creek only excepting what may be necessary and sufficient for carrying two run of mill stones on the west side, and also when not required for the use of the saw mills of said Kelleran what may be necessary for such other machinery, as may be erected on the west side." At the date of the suit the defendants were using water for five run of stones, two cleansers and four bolts; they were also using water to run a carding machine, and for a cabinet shop.

The defendants claimed at the trial that, owing to their improved water wheels and other modern improvements, they were using no more water, then, than they were anciently using with their tub wheels, and two run of stones.

The verdict was for the defendants. The case and the plaintiff's exceptions appear in the opinion.

*J. Baker*, for the plaintiff.

*J. C. Madigan & J. P. Donworth*, for the defendants.

LIBBEY, J. This is an action of case for the unauthorized use by defendants of the water of the Meduxnekeag creek, in Houlton, from the 7th of April, 1869, to January 15, 1873, which the plaintiff avers belonged to him.

On the 21st of November, 1834, the mill privileges, on both sides of the creek on lot No. 38, were owned by Jay S. and Lysander Putnam, except "the privilege of taking as much water from the mill dam as will be necessary for the use of the tan house so as not to injure the grist mill," which was conveyed by Jay S. Putnam to James A. Drew, February 19, 1829. J. S. Putnam owned the whole privilege on the west side of the stream, and three-fourths of the privilege on the east side as tenant in common with Lysander Putnam.

On that day, they conveyed to Edward Kelleran a part of said lot with the privilege on the east side of the stream by deed of warranty by the following description, "a certain parcel of land and mill privilege lying in said Houlton, being a part of lot numbered thirty-eight on the plan of said township, being all the land and privilege of said Putnams lying on the east side of the Meduxnekeag creek, and pertaining to said lot numbered thirty-eight, together with the right and privilege of all the water of said creek, only excepting what may be necessary, and sufficient for carrying two run of mill stones on the west side of said creek, and also, when not required for the use of the saw mills of said Kelleran or those purchasing of or acting under him, what may be necessary for such other machinery, (saw mills excepted,) as may be erected on the west side of said creek. The said Putnams and said Kelleran further covenant and agree that they will keep and maintain

a good and sufficient mill dam, on said privilege, the charge and expense of the same to be borne and paid, one-half by said Putnams and the other half by said Kelleran."

The plaintiff, through several mesne conveyances, holds the title conveyed to Kelleran by this deed, and he admits that the defendants have all the title remaining in the Putnams after this conveyance.

It appeared in evidence, that prior to November 21, 1834, Jay S. Putnam had had a grist mill on the west side of the stream, but at that time it had been taken down, and was rebuilt in 1835; that the Putnams had had a saw mill on the east side of the stream which had been taken down prior to the 21st of November, 1834; and at that time Kelleran was constructing, on the privilege on that side, a double saw mill, or two mills under one roof, and had one saw in operation that fall, and that the rest of the machinery was put in some time afterwards. That mill is the one owned by the plaintiff.

The defendants' grantors, William Mays and James M. Vanwart, on the 9th day of September, 1857, leased to Richard L. Baker, for the term of fifteen years, a small lot of land on the west side of the stream, "and after reserving for the grist mill sufficient water for three run of stones, and the right of water formerly granted to James A. Drew for a tannery, and Edward Kelleran for saw mills, the said lessee shall have a right of water to the extent of eighteen inches square from the flume of said mill, and to construct and maintain under said mill a water wheel with such gearing thereto as he may require for the application of said water power to such machinery as he may erect," &c., with a covenant by the lessors to permit the lessee to renew the lease for another term of fifteen years, or pay him the value of the improvements made on the premises. This lease was recorded December 17, 1857. The wheel constructed under this lease was called the Baker wheel. The defendants became the owners of the grist mill, April 10, 1862, and at the expiration of the lease elected not to extend it for another term, and took and paid for the improvements of the lessee, by appraisal as provided in the lease, November 23, 1872. From that time to the 15th of January, 1873, the machin-

ery operated by the Baker wheel was used by the defendants' lessees.

After the defendants purchased the grist mill, they made improvements in it, putting in new improved wheels, five run of stones, four large and one small run, two cleansers and four bolts.

There was no evidence of any use of water for the tannery during the time covered by the plaintiff's writ.

The legal rights of the parties depend upon the construction to be given to the deed of the Putnams to Kelleran, of November 21, 1834.

The plaintiff requested the court to instruct the jury as follows:

I. The deed from the Putnams to Kelleran is to be construed most strongly against the grantors and in favor of the grantee if there is doubt about the intention of the parties.

II. That that deed grants all the power and privilege in the stream, "except what is necessary and sufficient to carry two run of mill stones," and, as the grantors made no exception as to the water for the tannery, they would be estopped by their covenants to deny that what the tannery was entitled to was a part of what was necessary to carry two run of mill stones, and as the defendants are in privity of estate with said grantors, they are equally bound thereby.

III. That, as against the plaintiff, the defendants have not a right to water sufficient to carry two run of mill stones besides enough for the tannery.

IV. Nor have the defendants a right to any water for the use of the tannery under the clause in the deed "such other machinery as may be erected on the west of said creek," because the tannery had already been erected and was then in operation.

V. That by the term of the Kelleran deed, he had a right, next in priority, after "water sufficient to carry two run of mill stones on the west side," to all the water "required to run the saw mills of said Kelleran" built by him in 1834 and finished in 1835.

VI. That the language in the deed is to be construed as conveying a measure or quantity of water sufficient to carry all the machinery which Kelleran had in his saw mills when completed, as that is what the parties manifestly had in contemplation at the time of the conveyance.

VII. That the second exception in the deed to Kelleran is void for inconsistency with the grant, and for uncertainty and indefiniteness.

VIII. At any rate it cannot have any force till the rights of the saw mill are fully satisfied.

IX. That if the jury find that there was no grist mill on the west side of the stream, November 21, 1834, when the Kelleran deed was given, then the quantity of water reserved by the Putnams in that deed, "necessary and sufficient to carry two run of stones," was an abstract quantity and had no reference to any particular mill, either the old one or the one built in 1835, but must be governed by what was usual, ordinary and reasonable, at that time for the purpose.

X. That if it was not customary, in 1834, to have cleansers in grist mills with separate wheels and power, water for cleansers was not reserved to the defendants' grantors by the terms in the deed in addition to the two run of stones.

XI. That under the reservation of water sufficient to carry two run of mill stones, the defendants would have no right, as against the saw mill, to water for operating the carding machine or cabinet shop; and if the defendants permitted them or either of them to be run when the water was required for the plaintiff's saw mill, during the time covered by the writ, they are liable in this action."

These requested instructions were not otherwise given then as appears in the charge of the court a report of which is a part of the case, and to the refusal to give them as requested the plaintiff excepts. He takes no exception to the charge given.

By reference to the charge it appears that the first request was given. The second, third and fourth requests were not given, for the reason that there was no evidence in the case that any water was used for the tannery during the time covered by plaintiff's writ. The plaintiff has no ground for exception for this refusal. As there was no evidence that any portion of the water excepted in the grant to Kelleran was used for the tannery, the question, whether the water granted for the use of the tannery in 1829 should be held to be a part of the exception in the Kelleran deed,

was not raised. A party has no right to an instruction to the jury upon an abstract legal proposition not raised by the evidence in the case.

The fifth and sixth requests were given in substance, and it is not urged by the learned counsel for the plaintiff that the charge upon these points did not state the law correctly.

The seventh request was not given, but upon this point the presiding judge instructed the jury as follows : "And here again arises a question, 'and also when not required for the use of the saw mills of said Kelleran or those purchasing of or acting under him.' It is said that at the time of this deed Kelleran had no saw mill, but you will consider that. The testimony is that at this time, the 21st of November, 1834, there was a frame for two double saw mills erected, and that a short time subsequently one saw was in operation. Now did not that deed contemplate that there should be more than one mill ? I instruct you that it must have been in contemplation that he meant the mills that were about being erected ; otherwise the deed would not have a proper interpretation. In addition to that the grantors, the Putnams, reserved all the water for their other machinery when it was not necessary for the defendants and for Kelleran to run his saws.

Now you perceive that was an important reservation, as much so as reserving a sufficient quantity of water to run two run of mill stones; that when it was not necessary for the Kelleran mills, then they might run any other machinery on the west side excepting a saw mill. That must have a reasonable construction, because Kelleran could not go and build enough mills to exhaust all the water, excepting what was necessary for two run of stones; but it must have reference to the number of saw mills which they contemplated building at that time." . . "There is no question in this case but that the plaintiff has succeeded to all the rights of Kelleran, and the defendants have succeeded to all the rights of the reservation in this deed."

We think this instruction presented the law correctly to the jury. In construing the deed to Kelleran, all its parts should be considered together, and a construction given which will give effect to each clause, if they are not inconsistent with or repugnant to

each other. The intention of the parties as ascertained from the whole deed is to govern. An exception in a deed is of a part of the thing granted, or which would be granted but for the exception. What will pass by words in a grant will be excepted by the same words in an exception. Shep. Touch., 100. *Bowen* v. *Conner*, 6 Cush., 132. *Hammond* v. *Woodman*, 41 Maine, 177. *Moulton* v. *Trafton*, 64 Maine, 218.

The second exception is not void for inconsistency with the grant. It is a part of the thing granted. It is not void for uncertainty and indefiniteness. Suppose Kelleran, owning all the water of the creek, had made a grant to the Putnams of water, in the same words of this exception, would the grant be void for uncertainty ? Would not the grantees take all the water for such other machinery as might be erected on the west side of the creek when not required for the grantor's saw mills ? If that would be the legal effect of the words in a grant, they should have the same effect in the exception.

We think under the true construction of the Kelleran deed, the rights of the parties to the water of the creek are :

I. The defendants have a right to the use of a quantity of water sufficient to carry two run of mill stones, operated by the water wheels in use at the time the deed was made, for the use of their grist mill and any other machinery, (saw mills excepted,) on the west side of the creek.

II. The plaintiff has the right to use all the rest of the water of the creek, when required for the use of the saw mills of said Kelleran, in process of construction when the deed was made, operated by the water wheels then in use for such purpose.

III. The defendants have the right to the use of the water of the creek for any machinery, (saw mills excepted,) on the west side of the creek, subject to the rights of the plaintiff as above defined.

The eighth, ninth and tenth requests were given in substance in the charge. The eleventh request was not given, and was properly refused.

The first exception is of an abstract quantity of water sufficient to carry two run of mill stones, and its use is not limited to the

running of a grist mill, but it may be applied to a carding machine or cabinet shop.

The only exception, to the admission of evidence against the plaintiff's objection, which is relied upon by the learned counsel for the plaintiff, is to the admission of the lease from Mays & Vanwort to Baker. This lease was by the defendants' grantors, for the term of fifteen years, duly recorded, subject to the rights of Kelleran to the use of the water. The defendants were not parties to the lease, had no right to control the lessees in the use of their machinery, and were not liable for any tort committed by them upon the rights of the plaintiff while they occupied under that lease. It was properly admitted. *Leonard* v. *Storer*, 115 Mass., 86.

The plaintiff moves to have the verdict set aside as against evidence. On a careful examination of the evidence submitted to the jury we think it sufficient to authorize the verdict.

He also moves for a new trial on the ground of newly discovered evidence. He alleges, as grounds for this motion, that he was surprised at the trial by the evidence of the defendants' witness, Robbins, as to the quantity of water used by the defendants' water wheels, and at that time had no means within his knowledge by which he could show the fallacy of that evidence; that since the trial he has discovered evidence which will show its fallacy; that he has discovered evidence showing that the tannery was in use during the time covered by his writ, using three hundred inches of water; that the tub-wheels in use in 1834, would use only one hundred and forty-four inches of water to each run of stones, and that there was not so much leakage or waste of water at his flume as was testified to by the defendants' witnesses.

He alleges newly discovered evidence on some other collateral points, but these are the principal and material points to which the alleged newly discovered evidence relates.

"A new trial will not be granted on account of newly discovered evidence when the party complaining, by proper diligence, might have discovered such evidence and had it at the trial. The law holds parties to the exercise of due diligence in the preparation of their cases. It is not sufficient that a petitioner for review or new

trial affirms that, with all the diligence in his power, he could not have discovered the evidence sought to be made available. The court must be satisfied from the evidence in the case that such evidence could not have been discovered by diligent inquiry before it will disturb the verdict." *Atkinson* v. *Conner*, 56 Maine, 546. *McLaughlin* v. *Doane*, 56 Maine, 289.

"The same principle requires that the court should be satisfied of the fact of surprise before it will grant a new trial on that ground." "When, from the nature of the issue, a party has reasonable cause to anticipate that the point, to which certain testimony is applicable, will be controverted, and when, by proper diligence, such party might have obtained the testimony claimed to be newly discovered, he cannot be said to be taken by surprise by the testimony thus introduced." *Atkinson* v. *Conner*, before cited.

Applying these rules to the case at bar, we think the plaintiff is not entitled to a new trial. In his writ he claims to recover of the defendants, on the ground that they had used more water, in operating their machinery, than they were legally entitled to. He thus put in issue the quantity of water necessary to carry two run of mill stones by the water wheels in use in 1834, and the quantity used by the defendants during the time covered by his writ. He called upon the defendants to be prepared with evidence to meet these issues, and should have expected them to produce the best evidence in their power of the quantity of water used by their wheels; that is, by actual measurement of the quantity of water used by the wheels when their mills were in operation. He should have been prepared with the same kind of evidence. He fails to show that in the exercise of due diligence, he could not have had it. True, he says he did not have access to the defendants' mill for that purpose, but he does not show that he even requested permission of the defendants for such access. He admits that he had access to their mill, from time to time, to see what machinery they were running, without objection by them. His general declaration that he had not access, is not sufficient. He cannot be said to be taken by surprise by the testimony on this point. If he was taken by surprise by that evidence, he

should have asked the court for a postponement of the case till he could test the accuracy of the evidence by measurement of the water, or get evidence to disprove it in some other way.

At the trial there was a good deal of evidence from experts on both sides as to the quantity of water necessary to carry two run of mill stones by the tub wheels in use in 1834, and the quantity of water used by the defendants' wheels. The alleged newly discovered evidence on these issues is merely cumulative, tending to support the plaintiff's theory at the trial. It comes from five witnesses who testify as experts, having knowledge of the use of water wheels, and of the science of hydraulics. We think this cannot be regarded as newly discovered evidence within the rules of law applicable to motions for a new trial, for newly discovered evidence. If the evidence of experts, which is merely cumulative, is to be regarded as newly discovered evidence, sufficient to entitle a party to a new trial, there would be no end to litigation in the class of cases in which the evidence of experts is admissible. This kind of evidence can be extended to an almost unlimited extent, and can be discovered as well before, as after trial.

If the plaintiff desired to raise the question of the use of water for the tannery, at the trial, he must have had the means of doing so by the proper evidence. The tannery was in the immediate vicinity of his saw mill, taking water from the same dam, and under his own observation. He must have known who operated it. The witness whom he calls on this point was his neighbor, and was at home at the time of the trial. It is too much for plaintiff to say that this evidence is newly discovered.

The rest of the alleged newly discovered evidence in regard to the use of water by the mills is merely cumulative; and comes from witnesses residing in Houlton, near the plaintiff, and well acquainted with him. The evidence fails to prove that the plaintiff, in the exercise of due diligence, could not have discovered that evidence before the trial.

*Exceptions and motions overruled.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and PETERS, JJ., concurred.