JACOBSON, Respondent, v. HAMMAN, Appellant.

(189 N. W. 517.)

(File Nos. 4855, 5029. Opinion filed July 17, 1922. Rehearing denied August 31, 1922.)

1. **Evidence—Disputed Testimony, Witnesses, Credibility of, Question for Jury.**

The credibility of witnesses whose testimony is flatly contradictory, is wholly a question for the jury.

2. **Sales—Seed Corn, Sale by Sample, Implied Warranty—Finding of Vendee's Truthfulness, Conclusive Under Proper Instructions.**

Where, if the evidence of vendee was true, there was a warranty. that the seed corn in question was to be selected so as to. be of a kind and quality of that shown him in wagon box at crib and a sample previously sent him, held, that, the instructions being clear and complete, and credibility of witnesses submitted to jury, a finding that vendee told the truth is conclusive upon appeal.

3. **Sales—Whether Corn Delivered Fit for Seed—Conflicting Evidence, Finding Conclusive.**

Under a direct conflict in evidence as to whether the corn in question sold to plaintiff, was reasonably good and fit for seed, finding of jury is conclusive, and will not be disturbed on appeal.

4. **Sales—Implied Warranty of Seed Corn, Knife Test by Vendee, Whether Caveat Emptor Controlling.**

The fact that vendee examined and knife tested at the cribs some corn sold to him for seed corn, pursuant to a sample previously sent him, did not amount to a waiver of implied warranty or representations as to kind and quality; nor does rule of caveat emptor apply. So held, where part of corn examined at cribs, and some selected therefrom shown plaintiff in a wagon box, was reasonably fit for seed, while that at the cribs had not been sorted nor examined by vendee.

5. **New Trial—Sale of Seed Corn, Tag Indicating Shipper's Identity, No Record of at Shipping Point, Failure to Investigate at Destination Point, Whether "Surprise" by Adverse Testimony Re—Rule Stated.**

In a suit upon warranty on sale of corn for seed purposes, one of vendors having relied upon prospective truthfulness of vendee's testimony as to name of shipper of the corn, and, he and his counsel failing to find at the express office at shipping point any record as to name of shipper, and having failed to investigate the records at destination station; testimony of one of the vendors being that E, another alleged vendor, was the shipper; held, that the case was not one of "surprise," since it is well settled that neither party is entitled to new trial on ground that he was "surprised" by the testimony of the adverse party.

6. **New Trial—Surprise, Right to New Trial Re, Waiver of by Failing to Move for Continuance.**

It is the settled rule of law, that right to new trial on ground of surprise is waived if, when surprise is timely discovered (in this case on the trial), no motion is made for continuance on that ground. So held, where the alleged newly discovered evidence (ascertained after the alleged surprise on trial) was easily ascertainable pending trial, and could have been made ground of motion for continuance, even though opposite party's testimony constituted "surprise" within meaning of statute; and appellant's failure to call it to attention of trial court by motion for continuance was waiver of right to claim surprise or due diligence in meeting issues at trial; rule being that party litigant cannot take chances of winning in absence of material evidence, and, being defeated, demand new trial for surprise.

Appeal from Circuit Court, Minnehaha County, Hon. JOHN T. MEDIN, Judge.

Action by Magnus E. Jacobson, against Peter Hamman and R. V. Erskine, to recover upon an alleged implied warranty of corn sold for seed purposes, a fraudulent conspiracy by defendants to sell to plaintiff the corn to be resold for seed, knowing same to be unfit for such purposes, being alleged. From a judgment for plaintiff, and from an order denying a new trial, defendant Hamman took separate appeals from the judgment and the order; the two appeals being consolidated and considered as one. Affirmed.

*Mundt & Mundt,* for Appellant.

*Bailey & Voorhees, P. G. Honegger,* and *Arthur W. Ewing,* for Respondent.

(4) To point four of the opinion, Appellant cited: Farrar v. Churchill, 135 U. S. 609, 34 L. Ed. 246; Anderson v. McPike, 86 Mo. 293, 26 C. J. 1163.

Respondent cited: Totton v. Stevenson, 29 S. D. 71, 135 N. W. 715.

(5) To point five, Appellant cited: 20 Standard Encyc. of Procedure, 263.

SMITH, J.   Action on implied warranty of corn sold for seed purposes. There were separate appeals, one from the judgment, the other from an order denying a new trial.. The two appeals. were consolidated by order of the court, and are to be considered as one. The complaint charges a fraudulent conspiracy by the two defendants to sell to plaintiff certain corn to be resold for seed, knowing the same to be unfit for such purpose. After a careful examination of the entire record we find the following facts to be practically undisputed:

Plaintiff resided at Madison, Minn., and was engaged in the business of selling farm machinery and farm supplies, including seed corn, to farmers in that locality. The defendant Hamman is a farmer residing near Humboldt, S. D., and in the spring of 1918 had on hand 2,142 bushels of corn in three cribs gathered and cribbed in the ordinary way in the fall of 1917. Owing to climatic and other conditions during the summer and fall of 1917, good seed was exceedingly scarce and unusually high priced in the spring of 1918. The defendant Erskine was in the farm produce business at Humboldt, near Hamman's farm, and knew that Hamman had this corn on hand in his cribs. In the spring of 1918 Hamman received a letter from one Meyer, his wife's cousin, who resided near Madison, Minn., asking about seed corn, and sample sacks of the corn selected from Hamman's cribs were shipped to Meyer, who showed the corn to plaintiff, Jacobson, who said·he thought it was good corn. Meyer told him there was more of the same corn for sale at Humboldt, where his uncle lived. Jacobson went to Humboldt and saw Hamman and Erskine about the corn. There is a direct and irreconcilable conflict in the evidence as to what occurred and as to the conversations between the three men at that time. It is undisputed that

when Jacobson arrived Erskine and one Smith were at work in the largest crib sorting over the corn, and throwing that selected for seed into a wagon box beside the crib, and that Jacobson examined the selected corn, and said he thought it looked good for seed. He also looked at and made some eaxmination of the corn in the other cribs, and, in substance, said he though good seed corn could be selected from them also. It is undisputed that Hamman was there and took some part in the conversation, but there is a direct conflict between Jacobson, Hamman, and Erskine as to what was said. The controversy will be made clearer by going back to an alleged transaction between Hamman and Erskine before Jacobson's arrival. Hamman, through Meyer, his nephew, had learned that Jacobson was looking for seed corn. Erskine knew the same thing. But he claims that he went to Hamman early in March to buy his corn. Not having, and not being able to obtain, the money to pay for it, he claims to have bought all the corn at $3 per bushel, under an agreement to pay over to Hamman the amount of all sales he might make until Hamman was fully paid. That the transaction was carried out under that form is undisputed. Erskine claims to have sold some 1,400 bushels of this corn as his own at $6 per bushel, and turned over enough of the proceeds to pay Hamman $6,426. This would leave 742 bushels unsold, and Hamman testified that he bought that back from Erskine, paying him therefor "210 bushels of good corn." It is not shown that Hamman had any other corn than that he claims to have sold to Erskine, and the jury might have been doubtful of the truthfulness of his statements, especially in view of the fact that it is shown that Hamman went to Mitchell and bought seed corn to do his own planting. It is conceded that Erskine was not, and is not, financially responsible, and that Hamman was and is financially responsible.

At the trial Jacobson testified, in substance:

That the shipping tag on the sample corn sent Meyer showed that Hamman was shipper; that when he arrived at the Hamman farm he found Erskine and another man sorting corn. That they had about 25 bushels sorted in a wagon box. That he looked it over pretty thoroughly, and knife-tested it. That it was a good average, and looked like the sample sent to Meyer. That after dinner he and Hamman went out together where they were sort-

ing. That he said to Hamman: "That is very good looking corn, and it is like the sample, and if I was sure this would be the kind of corn I would get, I would not be afraid to buy it. * * * I asked Hamman if I could be sure of having corn sorted the way it was in that wagon box? He said, 'You can be sure of that. On account of being busy and having lots of work to do here, I did not have time to sort and sell this corn, and so I got Erskine who is a good corn man, to do it for me.'" That he told Hamman the sample sack had been turned over to him, and Hamman said it was all alike. That Hamman said, "You can depend that is the kind of corn you can get ,because I would not be guilty of letting any other kind of corn go off the place," and that Erskine said, "That is the only way we sort corn here. You can be sure of that."

Plaintiff further testified .that he had asked Hamman if he had made any test of this corn, and that Hamman told him he had made three different tests, and that it tested from 73 per cent to 95 per cent. This statement, if made, evidently referred to sorted and selected seed corn, such as that exhibited in the wagon box by the crib. These statements are flatly disputed by Hamman and by Erskine and Smith, who were sorting corn.

[1] The credibility of these witness was wholly a question for the jury. Bailey v. Walton, 24 S. D. 118, 123 N. W. 701; Unzelmann v. Shelton, 19 S. D. 389, 103 N. W. 646; Comeau v. Hurley, 24 S. D. 255, 123 N. W. 714; Olson v. Day, 23 S. D. 150, 120 N. W. 883, 20 Ann. Cas. 516; Kamp v. Madison, 38 S. D. 432, 161 N. W. 809; Peters v. Kerkiakedes, 27 S. D. 371, 131 N. W. 316; Barnard v. Tidrick, 35 S. D. 403, 152 N. W. 690.

[2] The instructions of the trial court, while not excepted to, are made a part of the settled record. They are exceptionally clear and complete, and the credibility of the witnesses was directly submitted to the jury. If the testimony of Jacobson was true, there was certainly a warranty that the corn he was to receive was to be selected so as to be of the kind and quality of that shown him in the wagon box at the crib and the samples sent to Meyer. Upon that question the jury found that Jacobson told the truth, and that finding is conclusive upon this court upon appeal.

[3, 4] It is appellant's contention that plaintiff's evidence is

insufficient to sustain the finding of the jury that the corn delivered to plaintiff was not reasonably good and fit for seed. Upon that question there was also a direct conflict in the evidence. Appellant's witnesses testified that all the corn supplied to plaintiff was sorted and selected for seed in the same manner as that shown to plaintiff in the wagon box at the crib. On the other hand, if plaintiff's witnesses, who saw and examined the corn shipped to plaintiff, are to be believed, the corn was not and could not have been so sorted and selected. Again the finding of the jury upon conflicting evidence is conclusive upon and cannot be disturbed by this court on appeal.

Appellant further contends that, because plaintiff saw and examined and knife-tested some of the corn in the cribs, he cannot be held to have relied upon a warranty, or representations as to the kind and quality of corn he was to receive, and that the rule of caveat emptor is controlling. In this contention appellant entirely ignores the conceded facts: First, that some part of the corn in the cribs examined was reasonably fit for seed, and that the corn shown plaintiff in the wagon box was of that kind; second, that the corn shown to plaintiff was in the cribs, and had not been sorted, and the part of it represented to be suitable for seed had not been selected out and exhibited to plaintiff and examined by him. In such case the rule of caveat emptor could have no application.

It was the seller's business to sort the corn, so that the corn selected and shipped would correspond with and be similar in quality to that shown plaintiff in the wagon box. Plaintiff's only concern was that he should receive corn of the kind and quality of that sorted out and shown to him.

Plaintiff and another witness testified at the trial that the shipping tag on the sample corn sent to Meyer, which was lost, showed Hamman to be the shipper. Erskine and Hamman testified that Erskine was the shipper. Appellant claims he was surprised by plaintiff's testimony on that point, inasmuch as he thought plaintiff would tell the truth, because if he did not do so the shipping records at Humboldt would show the facts; that during the trial, and after plaintiff's witnesses had testified as stated, he and his attorney went to the express office to find the record of shipment to dispute plaintiff's evidence and sustain his

own, but found that no such record was in the office at Humboldt; that he could not then investigate the records at Madison, Minn., and that his counsel advised that they proceed with the trial with such evidence as they then had, and, if defeated at the trial, such evidence as the records at Madison would disclose could be made the grounds of a motion for a new trial. Appellant proceeded accordingly, and, being defeated, has made such motion, and presents affidavits tending to disclose that the records at Madison show Erskine to have been the shipper. In his brief appellant says:

"We maintain there was accident and surprise which ordinary prudence could not have guarded against * * * because the plaintiff and his witnesses swore falsely, etc.

"The appellant had a right to expect the plaintiff and his witnesses to tell the truth."

[5] The rule seems to be well settled by the authorities that neither party is entitled to a new trial on the ground that he was "surprised" by the testimony of the adverse party. Travis v. Barkhurst, 4 Ind. 171; Helm v. First National Bank, 91 Ind. 44; Gardner v. State, 94 Ind. 489; Delaney v. Brunette, 62 Wis. 615, 23 N. W. 22; Beal v. Codding, 32 Kan. 107-112, 4 Pac. 180; Dimmey v. Railroad Co., 27 W. Va. 32, 55 Am. Rep. 292; Atkinson v. Conner, 56 Me. 546; Blake v. Madigan, 65 Me. 522; Beckford v. Chipman, 44 Ga. 543; Whitman v. Leslie, 54 How. Prac. (N. Y.) 494. And it is even held that reliance upon the unsworn statement of an adversary witness as to what will be his testimony is not the exercise of ordinary prudence, and surprise resulting therefrom, whereby a party goes to trial without witnesses to prove the real truth, is not ground for a new trial. Pittsburgh, etc., R. R. v. Sponier, 85 Ind. 165; Klockenbaum v. Pierson, 22 Cal. 163; Armstrong v. Davis, 41 Cal. 499.

[6] Furthermore, it is the settled rule of law in this, as in other jurisdictions, that the right to a new trial on the ground of surprise is waived if, when the surprise is timely discovered, it is not made known to the court, and no motion is made for a continuance of the cause on that ground. Bayonne Knife Co. v. Umbenhauer, 107 Ala. 496, 18 South. 175, 54 Am. St. Rep. 115; Wells v. Wells, 27 S. D. 257-261, 130 N. W. 780; State v. Barnes,

26 S. D. 268, 128 N. W. 170; State v. Gregory, 31 S. D. 425-429, 141 N .W. 365; Lee v. Braggman, 39 S. D. 177-183, 162 N. W. 788.

The existence of this alleged newly discovered evidence was easily ascertainable pending the trial, and, if deemed vital or important, could have been made the ground of a motion for a continuance even if it be assumed that plaintiff's testimony constituted "surprise" within the meaning of the statute, and the failure of appellant to call it to the attention of the trial court by a motion for continuance was a waiver of the right to claim surprise or due diligence in meeting the issues presented at the trial. The rule is founded upon the well-settled principle that a party litigant cannot take his chances of winning in the absence of material evidence, and, being defeated, demand a new trial on the ground of surprise.

Appellant assigns numerous errors in receiving and excluding evidence, and alleges excessiveness of the verdict. We have carefully considered all the assignments not herein discussed, and are satisfied that the record discloses no prejudicial error.

The order and judgment of the trial court are therefore affirmed.