ANDREW E. ERICKSON ET AL. v. MICHIGAN LAND & IRON CO. (LIMITED), EDWIN A. WETMORE AND GEORGE J. NORTHROP.

*Construction of deeds—Reservation of mining rights—Ejectment—Costs.*

Where a deed in fee simple reserves minerals or reserves them with the right of mining, the reservation must always respect surface rights of support, and cannot, of itself, permit the surface to be destroyed without some additional statutory or contract authority therefor; and such authority must be carefully construed to prevent the destruction of surface rights.

Where minerals are reserved from a deed in fee simple, easements to do such acts as are reasonably necessary to remove them, may be granted or reserved so as to attach to the mining estate.

The right to use shafts or other mining excavations or erections made and used solely for mining purposes is in the nature of an easement which is appurtenant to the mine.

Grantees in a deed reserving mining rights below the surface but providing that in case any of the surface shall be permanently occupied by the owner of the reserved right he shall compensate the owner of the fee, cannot bring ejectment on account of such occupation so far as it is necessary to the operation of the mine.

Where a new trial in ejectment was allowed for the omission to identify in the finding the various holdings of defendant as necessary or not in the enjoyment of an easement, but where the case came up on agreed facts merely for the settlement of principles, no costs were allowed unless the case should be actually retried, in which event costs below, to abide the event, were granted.

In Michigan the common-law rule is followed, which in the construction of deeds, rejects reservations repugnant to the estate granted; the rules determining what rights are personal and do not run with the land are also regarded. But the mere form of the deed and technical phrases as to exceptions and reservations cannot prevent any lawful provision therein from being carried out according to its unambiguous intention.

A grant in fee simple of the entire freehold except certain contents of it, such as minerals, the right to which is reserved, is materially different from a mere surface grant.

Error to Marquette.   (Grant, J.)    April 24.—June 13.

EJECTMENT.   Plaintiffs bring error.   Reversed.

*F. O. Clark* for appellants.   When anything is granted all the means of attaining it and all the fruits and effects of it are also granted; *Marvin v. Brewster Iron Mining Co.* 55 N. Y. 549; *Comstock v. Johnson* 46 N. Y. 615; Sheppard's Touchstone 89, 100; reservation of minerals and mining rights are construed as is an actual grant thereof: 5 Am. Law Reg. (N. S.) 171–174; the right reserved to the use of the surface incident to the reservation of a mining right is such use as is necessary for the exercise of the right; it must be more than one of mere convenience: *Screven v. Gregorie* 8 Rich. 158; *Pettingill v. Porter* 8 Allen 1 · *New York L. Ins. & T. Co. v. Milnor* 1 Barb. Ch. 353

*William D. Williams, B. F. Stevens* and *E. J. Mapes* for appellee.

CAMPBELL, J.   This is an action of ejectment, claiming in the declaration the northwest quarter of section 25, town 48 north of range 31 west, except a strip 80 rods by 14 in the northeast corner.   All parties claim through the Marquette, Houghton & Ontonagon Railroad Company, the original grantee from the government.   The plaintiffs are grantees subject to certain reservations of minerals, etc., and rights connected with their working and removal, and defendants among them own such rights as were reserved,—the Land & Iron Company as proprietors and the other defendants as licensees and lessees.   The main question involved is whether the defendants are in hostile and unlawful occupancy of anything which plaintiffs have a right to exclude them from as owners of the soil.   Several questions were argued, which, in our judgment, do not strictly arise upon the record, which is somewhat limited in

its legal bearings. A reference to the facts, on which there is a stipulated finding, will explain the condition of things.

On December 12th, 1877, the railroad company conveyed to plaintiffs by deed, containing the following provisions the nature of which as exceptions or reservations was somewhat mooted on the argument, the chief contention being as to their validity as a whole, and whether capable of severance so as to be good in part, though bad in part.

" Saving and reserving, however, unto the said party of the first part, and to its successors and assigns forever, all ores and minerals, and all slate, sandstone, limestone, granite, marble, and other stone valuable for building or other purposes, on or beneath the surface of said lands or any part or portion thereof, together with the right to enter upon said lands and explore therefor, and to mine, smelt and refine such ores and minerals, and to quarry or dress such stone or rock, and to remove the same, and for that purpose to erect or construct and maintain all such buildings, machinery, roads or railroads, sink such shafts, remove such soil, occupy as much of said land, and use and divert such streams or pools of water thereon, as may be necessary or convenient for the successful prosecution of such business.

"But in case of the permanent occupation of any of said lands as above reserved, and after the same shall be so occupied, said party of the first part, its successors or assigns so occupying the same, shall pay to said parties of the second part, their heirs or assigns, such compensation for the surface right thereto, hereby granted, as may be assessed by two disinterested persons of the county where the lands lie, one of whom shall be chosen by each of the parties hereto or their successors or assigns, whose determination when made in writing and signed by them shall be final, and the amount of compensation so fixed by them shall be paid on demand by the party so occupying, to the persons entitled thereto, upon the execution and delivery by said parties of the second part, their heirs or assigns, to the party so occupying, of a clear conveyance free from all incumbrances,

of all the right, title and interest granted hereby, in and to the lands so occupied." A further provision related to an umpire in case of disagreement.

In June, 1881, the railroad company gave a written license to Wetmore and Northrop giving them an option until October 30, 1881, to take a mining lease of the iron ore and requiring them to keep up diligent explorations for ore in the meantime, confining their explorations to iron ore, and all subject to this clause: "Said parties of the second part are not authorized by anything herein, to enter upon or damage the surface of said land in any manner, until they obtain at their own expense the right to do so from the owner of the surface."

On December 20, 1881, the Land & Iron Co. which had held by quit claim whatever rights the railroad company had reserved, made a lease to Wetmore and Northrop of "the iron ore" on the land in question, with leave to "enter, mine and remove such iron ore, with the same rights and privileges that said party of the first part would be entitled to, and no more, if these presents were not executed." "Said parties of the second part must settle with the owners of the surface for the right of occupying, and for all such damages as may be done to such surface, by reason of such mining or exploring. The party of the first part will not in any wise be liable therefor. This lease shall run for the term of twenty years from and after the date of this indenture for the purpose only of mining iron ore on said land." The mines were to be worked on a royalty and up to their full capacity, and to be left in good condition with all timbers, framework, shafts, ditches, etc., and all rubbish, etc., to be dumped where it would not interfere with the future working.

Under these documents Wetmore and Northrop discovered iron ore, and have remained in continued possession of the portion of the land where the ore was found, and erected thereon buildings for mining purposes, and have deposited therein rock, earth and other refuse matter "in the customary, usual, and ordinary manner and method of mining

operations." The portion so occupied consists of small pieces of land on which pits have been dug, earth and other material piled, all enclosed within a strip of less than 40 rods in width and containing about 40 acres extending across said premises, but not covering all of said strip. The value of the mineral is estimated at $100,000.

Upon this the court rendered judgment for the defendants, finding as legal conclusions that the exceptions and reservations are good and valid, and not repugnant; that the reservation of ores and minerals, and the right to explore and mine are independent of the rest, even if those are invalid; that the Land & Iron Company owns the mineral with right to enter, explore and mine according to the deed, and that defendants are lawfully in possession for purposes of exploring and mining.

In the view we feel bound to take of this case, we do not think it important to consider the validity of the rights asserted but not practically involved in this controversy. The authorities are not as clear or as consistent as they might be, and it is evident many of the decisions are based somewhat on local peculiarities and statutes. With our simple allodial tenures the rules cannot be precisely similar to those applicable in some of the English estates. Without considering these authorities at length on points which here are abstract, we need only remark that in the absence of legislative changes, we think the common-law rule rejecting reservations repugnant to the grant, and the rules determining what rights are personal and do not run with land, cannot be disregarded, while on the other hand the mere form of the deed, and the technical phrases as to exceptions and reservations, should not prevent any lawful provisions in a deed from being carried out according to its unambiguous intention.

In the present case we are only concerned with the provisions in the deed which reserve the mineral and grant certain easements in regard to getting it out. We agree with the circuit judge that the mineral and such mining rights as may lawfully attach to its ownership, may stand as a sepa-

rate subject, and so far as valid may be upheld without reference to the other claims which are distinct in their nature, and some of which, at least, it has been argued with much force may not be attached to the estate, or may be repugnant. Upon this we express no opinion.

One point, however, which bears somewhat on all the questions involved, is that the grant to plaintiffs is not a mere surface grant. It is a grant, in fee simple, of the entire freehold, except certain contents of it. It differs materially therefore from a mere surface grant, which has sometimes been likened to the upper story of a building, entitled to support from below, but covering none of the subjacent land. It is also to be noted that the whole fee simple of the surface is expressly recognized as being in plaintiffs, for any destruction or permanent use of which they are entitled to compensation, and their deed is made requisite for the conveyance of such a permanent right. Whatever absolute surface rights were reserved by their grantor were no more than easements intended or supposed to attach to the ownership of the minerals, or privileges which we are not now called on to define.

As most of the decisions now to be found on these subjects are modern, and form no part of our inherited law, we are not bound to consider the decisions of original and appellate tribunals as having necessarily the same relative weight as where they were rendered. But upon the principal questions involved on this record there is no great conflict.

It seems to be the general, and we think the better doctrine, that a mere reservation of minerals, or such a reservation with the right of mining, must always respect surface rights of support, and will not, standing alone, permit the surface to be destroyed, without some additional statutory or contract authority, and that such statute or contract authority will be construed carefully to prevent the destruction of surface rights. *Roberts v. Haines* 6 El. & B. 643 ; *Smart v. Morton* 5 El. & B. 46 ; *Harris v. Ryding* 5 M. & W. 60 ; *Humphries v. Brogden* 12 Q. B. 739 ; *Jeffries v. Williams* 5 Exch. 792 :

1 E. L. & Eq. 433; *Hilton v. Granville* 5 Q. B. 701; *Smith v. Darby* L. R. 7 Q. B. 716; *Hext v. Gill* 7 Ch. App. 699; *Bell v. Wilson* 1 Ch. App. 303.

But it seems to be also agreed that easements to do such acts as are reasonably necessary to get out the mineral and remove it from the mine may be granted or reserved so as to attach to the mining estate. *Rowbotham v. Wilson* 36 E. L. & Eq. 236: s. c. on appeal 8 H. L. Cas. 348; *Rogers v. Taylor* 38 E. L. & Eq. 574; *Smart v. Morton* 5 El. & B. 46; *Harris v. Ryding* 5 M. & W. 60; *Cardigan v. Armitage* 2 B. & C. 198; *Aspden v. Seddon* 10 Ch. App. 394; *Smith v. Darby* L. R. 7 Q. B. 716; *Eadon v. Jeffcock* L. R. 7 Exch. 379.

Under these and many other cases which might be referred to, we think that ejectment will not lie for those parts of the land necessarily occupied by shafts, or other mining excavations or erections made and used solely for mining purposes, and that their use is in the nature of an easement which is appurtenant to the mine. And while the plaintiffs are undoubtedly entitled to compensation under the deed for this appropriation of the surface, ejectment is not the proper remedy for that. And inasmuch as the lessees were required by their lease to do nothing without obtaining authority from the plaintiffs, it is difficult to say how the Land & Iron Co. can be held to have taken any possession merely as lessors of parties whom they did not authorize to take it without compensation.

But there is a difficulty in the finding which in our opinion must be regarded as requiring a new trial. If the facts found are to be understood as showing a possession by defendants of the whole 40 rods strip, they are certainly in wrongful possession of most of it. The enjoyment of their easement can only be lawfully had in subjection to the general right of plaintiffs to the surface over which it is exercised, and without plaintiffs' leave must be confined to the particular smaller parcels actually used and needed. But the finding is defective in not identifying in any way these several occupations. Inasmuch as the case has come up to have the principles settled as far as possible on agreed facts

this was manifestly an oversight, and there is no likelihood of further difficulty.

We therefore reverse the judgment and remand the case for a new trial without costs of either court thus far, but with costs below to abide the event if the case should be again tried.

GRAVES C. J. and COOLEY J. concurred.