LEWIS EMERY, Jr., v. THE COMMON COUNCIL OF THE
VILLAGE OF THREE RIVERS.

*Water-power—Deed—Construction.*

The owner of a water-power and adjacent lands conveyed a site
for a factory, and also an undivided one-eighth of the land
flowed and subject to flowage. The deed further provided that
if the undivided one-eighth of the water-power *which was
intended to be conveyed* did not amount to 225 inches of water
the grantee should have the right to use enough water from
the pond to make up that amount, subject to the reservation
by the grantor of the *first* use of a sufficient amount of water
properly used to drive certain specified stones and machinery
in his grist-mill,—the grantee to have the *next* use of the water
to the amount specified in the grant. The deed further pro-
vided that in case of any break in the dam, or necessary
repairs thereto, the grantor should pay seven-eighths, and the
grantee one-eighth, of the expense, except such repairs as were
needed in the separate races and appurtenances of each prop-
erty, which were to be made by the owners. The grantor
reserved the right to raise the dam two feet. In a suit against
claimants under the grantee for an alleged improper use of
water under the grant, the deed is construed as follows:

*a*—To convey absolutely one-eighth of all the land flowed, or
subject to flowage, including the water on such land.

*b*—Under said deed the grantor parted *absolutely* with one-
eighth of his water-power, and, if the same did not amount to
225 inches of water, the grantee was entitled to the use of
enough of the remaining seven-eighths to make up the deficiency,
provided the grantor could spare it without interfering with
the use of his grist-mill, as specified in the deed.

*c*—The reservation of enough water to operate the grantor's
grist-mill referred to the seven-eighths of the water-power not
conveyed by the deed.

Error to St. Joseph. (Peck, J., presiding.) Argued
November 13 and 14, 1889. Decided December 28, 1889.

Case. Defendants bring error. Reversed. The facts
are stated in the opinion.

*Howell, Carr & Barnard* and *B. E. Andrews,* for appellants, contended:

1. The plaintiff claims a construction by parties,—a practical construction. But this must be one in which they all agree, or it is of no force; citing *Burgess v. Badger,* 124 Ill. 288; and the claimed construction was by tenants and subtenants, and is not shown to have been known to the owners.

2. The nature and quantity of interest must be ascertained from the instrument, and evidence of extraneous facts cannot be received to alter it; citing *Jacobs v. Miller,* 50 Mich. 119–126; *Mathews v. Phelps,* 61 Id. 332; 3 Washb. Real Prop. (5th ed.) 429, and note; 2 Whart. Ev. §§ 1050–1054; *Jackson v. Foster,* 12 Johns. 488; but the actual state of the property at the time of the execution of the deed may be shown as bearing upon its construction.

3. A deed is to be construed most strongly against the grantor, and most favorably to the grantee; citing Shep. Touch. 165; *Piper v. True,* 36 Cal. 606; and, if a grant can inure in different ways, the grantee may take it in such a way as shall be most to his advantage; citing *Jackson v. Gardner,* 8 Johns. 394; *Jackson v. Blodget,* 16 Id. 172; *Vance v. Fore,* 24 Cal. 436; 2 Dev. Deeds, § 848; 3 Washb. Real Prop. 422 (628); Martindale, Conv. 81; and exceptions and reservations are subject to the same rule; citing Gould, Waters, § 311; *Alton v. Transportation Co.,* 12 Ill. 38, 58; *Duryea v. Mayor,* 62 N. Y. 592; *Klaer v. Ridgway,* 86 Penn. St. 529; Angell, Wat. §§ 149*f*, 149*h*; *Garland v. Hodsdon,* 46 Me. 511.

4. Whatever was intended to be conveyed was conveyed,—a statement of intention controls; citing *Ousby v. Jones,* 73 N. Y. 621; *Morrison v. Wilson,* 30 Cal. 344–348; *Bobo v. Wolf,* 18 Ohio St. 466, 467; *Garland v. Hodsdon,* 46 Me. 511; 2 Dev. Deeds, §§ 836–839; *Mathews v. Phelps,* 61 Mich. 332; which intention was to convey one-eighth of the water-power. The deed conveys one-eighth of the land flowed, and one-eighth of the land subject to be flowed, in fee-simple, and the water-power being appurtenant to the land, a like interest thereof was conveyed; citing *Mandeville v. Comstock,* 9 Mich. 558; and the language following the description, viz: "Together with all and singular," etc., is important in showing that all the grantor's interest was conveyed in the land described; citing *Dubois v. Campau,* 24 Mich. 365, 366; *Hoffman v. Harrington,* 28 Id. 103, 104.

5. Under the term "appurtenances" only such easements as are necessary to a proper enjoyment of the estate granted will pass; citing *Griffiths v. Morrison,* 106 N. Y. 165.

6. It will be admitted that the eighth conveyed is an undivided eighth, varying in quantity; that it is an eighth of the entire power and not of the eight-foot head, and that it is appurtenant to the land described in the deed; citing Gould, Waters, §§ 148, 194–197; *Baker v. Bessey*, 40 Am. Rep. 377; 3 Washb. Real Prop. 412; *Hapgood v. Brown*, 102 Mass. 452; *Curtis v. Norton*, 58 Mich. 411; *Richardson v Bigelow*, 15 Gray, 154

7. It seems beyond question that the deed deals with two things, an eighth of the whole power, and 225 inches in a portion of the whole power. The one is in fee, appurtenant to land, and the other in gross and a mere license, and as such it could not pass to heirs and assigns; citing 6 Am. & Eng. Encycl. Law, 141, 142.

8. The law favors the perfect estate, and will lessen an imperfect one rather than a perfect one; citing *Edwards v. McClurg*, 39 Ohio St. 41; *Rood v. Hovey*, 50 Mich. 395; *Erickson v. Land & Iron Co.*, Id. 604; *Garland v. Hodsdon*, 46 Me. 514, 515; *Craig v. Wells*, 11 N. Y. 315; *Wilcoxson v. Sprague*, 51 Cal. 640;. *Southard v. Railroad Co.*, 26 N. J. Law, 13.

9. A definite certain description conveyed in fee is not limited by subsequent recitals, covenants, or agreements which can be referred to another and ambiguous description, or to an uncertain estate; citing *Hubbard v. Apthorp*, 3 Cush. 422; *Edwards v. McClurg*, 39 Ohio St. 41; *Barney v. Miller*, 18 Iowa, 460; and when the subsequent provision is repugnant to the grant it it will be rejected; citing 3 Washb. Real Prop. 422; *Wilcoxson v. Sprague*, 51 Cal. 640–642; *Canal Co. v. Hewett*, 55 Wis. 96; *Erickson v. Land & Iron Co.*, 50 Mich. 604; *Knapp v. Wolverton*, 48 Id. 292; *Smith v. Smith*, 71 Id. 633.

*Howard & Roos*, of counsel, for appellants, contended:

1. That the purpose of construction is to give effect to an instrument; citing *Kiefer v. Seminary*, 46 Mich. 636; Gould, Waters, § 311, and cases cited.

2. Any restriction placed by a grantor upon a grant, respecting the use of water or rights in and to water, must be clear and unambiguous, and not repugnant to the grant; citing Gould, Waters, § 312, and cases there cited.

*Dallas Boudeman* and *Pealer Bros.*, for plaintiff, contended:

1. Water cannot be conveyed like realty. There is, in fact, no ownership in it, but only a right to use it. A conveyance of it, however strong it may be drawn, but transfers the grantor's rights to its use; citing Gould, Waters, §§ 304, 304a.

2. The conveyance of a ferry-way includes the land under it and used with it; citing *Gerrish v. Gary*, 120 Mass. 132; and the grant of a water-ditch would include another one with which it is fed, and without which it would be useless; citing *Donnell v. Humphreys*, 1 Mont. 518, the second ditch being appurtenant to the first.

3. The grant of water easements carries with it by implication, as secondary or subsidiary easements, everything that is beneficially necessary or incident to the grant, whether mentioned or not as "privileges," "appurtenances," or the like; citing Gould, Waters, § 306; *Pomfret v. Ricroft*, 1 Saunders (Williams), 323 (note 6); *Hodgson v. Field*, 7 East, 622; *Hinchliffe v. Earl of Kinnoul*, 5 Bing. (N. C.) 1; *Pickering v. Stapler*, 5 Serg. & R. 107; *U. S. v. Appleton*, 1 Sum. 501.

4. As an "appurtenant" can therefore follow the grant of an easement as well as of land, it follows that whether or not the amount actually necessary to create the 225 inches can be obtained from one-eighth of the water, yet the conveyance is of water sufficient to amount to the 225 inches, and this grant is independent of the amount of land conveyed; and that the land or the use of it might be appurtenant to the right in the water conveyed, as well as the water might be appurtenant to the land.

5. A grantor may withhold easements or privileges in water, either by way of reservation or exception; citing *Mfg. Co. v. Whittier*, 10 N. H. 305; *Knox v. Silloway*, 10 Me. 201; *Bowen v. Conner*, 6 Cush. 136; *Wade v. Howard*, 6 Pick. 492; *Barnes v. Lloyd*, 112 Mass. 231; *Peck v. Conway*, 119 Id. 549; and these become binding upon the grantee on his accepting the deed; citing *Emerson v. Mooney*, 50 N. H. 315; *Vickerie v. Buswell*, 13 Me. 289; *Newell v. Hill*, 2 Metc. 180.

6. The words "exceptions" and "reservations" are used indiscriminately, and effect will be given to them according to the intention of the parties, irrespective of the words used; citing *Mfg. Co. v. Whittier*, 10 N. H. 305; *Cutler v. Tufts*, 3 Pick. 272; *Hill v. Cutting*, 107 Mass. 597; *Bowman v. Wathen*, 2 McLean, 366.

7. What the parties did immediately after the execution of the deed affords a safe criterion of their intention, and of the meaning of the doubtful language in the deed.

8. The situation of the parties, the subject matter of the transaction, the contemporaneous and subsequent acts, as well as the language used in the deed, should have operation in the legal effect and construction of their contract; citing *Bird v. Hamilton*, Walk. Ch. 361; *Paddack v. Pardee*, 1 Mich. 421; *Newton*

*v. McKay*, 29 Id. 1; *Stuart v. Worden*, 42 Id. 160; *McConnell v. Rathbun*, 46 Id. 303; *Spaulding v. Coon*, 50 Id. 622; *Ferris v. Wilcox*, 51 Id. 105; *Mfg. Co. v. Railway Co.*, 64 Id. 123; *Smith v. Smith*, 71 Id. 633.

9. Plaintiff is protected in his construction of the deed by a long-continued, uninterrupted, and adverse use of the water-power to the extent now claimed by him, and such an uninterrupted use under a claim of right, for the statutory period applicable to real estate, will ripen into a complete title; citing Gould, Waters, § 329, and cases cited; Angell, Wat. § 200 *et seq.;* Washb. Eas. §§ 283, 354, 388 *et seq.;* *Pillsbury v. Moore*, 44 Me. 254; *Bucklin v. Truell*, 54 N. H. 122; *White v. Chapin*, 12 Allen, 516; *Townsend v. McDonald*, 12 N. Y. 381; *Law v. McDonald*, 9 Hun, 23; *Railroad Co. v. McFarlan*, 43 N. J. Law, 617; *Conklin v. Boyd*, 46 Mich. 56; *Bunce v. Bidwell*, 43 Id. 542.

CAMPBELL, J. Plaintiff sued defendants for using more water than they were entitled to under the title vested in them in the water-power of Rock river. The only important question is whether defendants owned an absolute or only a contingent interest. Plaintiff claims that defendants have no interest which is not subject to his prior claim to use the entire power for his mill, if wanted for the use of the equivalent of four run of stone. Defendants claim an absolute right to one-eighth of the power, and a qualified right to still more, if the latter is not needed by plaintiff.

I think the whole question turns on the meaning of the deed, and that it can make no difference what plaintiff has done in enlarging his improvement; and it is equally independent of any supposed policy or expectation of plaintiff or his grantors. There was nothing to prevent them from granting as much of their property as they saw fit, and it can make no difference whether *ex post facto* wisdom would have prevented the contract, had it been anticipated.

The deed in question was a grant of property needing

some power to run it successfully. After conveying the land, it proceeds as follows:

"Together with the undivided one-eighth part of the land flowed, or subject to be flowed, by said pond, for which the parties of the first part have a title in fee-simple, together with the undivided one-eighth of all the interest the parties of the first part have in and to other lands now flowed by said pond; and it is understood and agreed by the parties that if the undivided one-eighth of the Rock-river water-power, which is hereby intended to be conveyed, does not amount to 225 inches of water, then the party of the second part, his heirs and devisees, shall have the right to use enough water from the said pond to make 225 inches, or a stream of water filling an opening 15 inches square, and the same to be used under a head of eight feet, upon the above-described premises, according to the following provisions, that is to say: The parties of the first part, for themselves, their heirs and assigns, reserve a sufficient amount of water, properly used, to drive four run of French buhr mill-stones, with all necessary machinery, first; and the party of the second part, his heirs and assigns, is to have the next use of the water, to the amount above specified, together with a proper use of the river below the bridge for tail water."

The deed proceeded to provide that in case of any break in the dam, or necessary repairs thereto, the grantors should be at seven-eighths, and the grantee at one-eighth, of the expense, except such repairs as are needed in the separate races and appurtenances of each property, which are to be made by the owners. The grantors reserve the right to raise the dam two feet. It will be observed that the liability of the grantee to bear one-eighth of the expense of the repairs is absolute, and not contingent. And if plaintiff's contention is correct, this duty will exist perpetually, although he should continually use all the water in the river, which it needs no testimony to show will always be diminishing, and not increasing.

The question is not one which can be made very much clearer by any reasoning process. There can be no doubt

that the deed conveys absolutely one-eighth of all the land flowed, or subject to flowage, which would, according to all rules of construction, include the water on such land. But, to remove any cavil on this head, the deed goes on to speak of the "undivided one-eighth of the Rock-river water-power, which is hereby intended to be conveyed." This language is perfectly plain, and can bear but one construction, which is that the plaintiff's grantors had parted absolutely with one-eighth of their water-power. The only other provision is one which under certain circumstances allows a qualified use of enough of plaintiff's own retained seven-eighths to make up 225 inches under an 8-foot head, if plaintiff can spare it, without interfering with his own mill. It is not in accordance with the context, or the general rules of language, to make the plaintiff's reservation of enough water to run his mill refer to any more than the water which was charged with the contingent use of the water requisite to make up 225 inches. I do not think that the subsequent demand of plaintiff's mill for more water deserves any more consideration than the needs of the factory, or was any more within the intention of the parties. It appears from the deed itself that seven-eighths of the water would, presumably, supply all plaintiff's .needs, with a possible surplus. It is equally clear that the grant was for a concern requiring some water-power, for which an absolute provision of one-eighth was made, with a contingent right to use more. It would not be a reasonable inference that this could, under any circumstances, be deprived of water altogether; and it would have been an absurd undertaking to keep property in repair which the plaintiff could prevent defendants from using at all.

I am unable to see any ambiguity in the grant by its terms, or any created by its context. I think defendants

were rightfully in the use of the power to the extent
of one-eighth, and that the holding otherwise was erro-
neous.

MORSE and LONG, JJ., concurred with CAMPBELL, J.

SHERWOOD, C. J., *(dissenting).* Prior to 1858, Edward
S. Moore was the sole owner of the Rock-river water-
power at Three Rivers, in this State, on Rock river.
The water-power embraced a dam and pond covering
several acres, and which gave a head at the dam of about
8 feet. Mr. Moore also owned the real estate lying about
the dam, and upon which it was situated. On the west
side of the river Mr. Moore had and owned a factory,
having one water-wheel, and taking water from the pond
through an opening 15 inches square. On the east side
of the river he had and owned a flouring-mill, having
five wheels, each of the same make and capacity of the
factory wheel. The mill contained four run of stone, and
the wheels were such as were usually used in mills and
factories at that time. In dry weather, in summer, the
mill used nearly all the water that could be obtained from
the river to run it. At other times the stream furnished
much more water than was needed for the mill. A por-
tion of the time the mill was kept running night and
day, and had been operated several years previous to 1858.
In that year Caldwell & Wilcox opened a factory near
the dam, on the west side of the river, for making sash,
doors, and blinds, and entered into a contract with Mr.
Moore for the purchase of a site therefor, together with
certain rights in the water-power. These were obtained,
and they entered into the business, which they continued
until 1859, when Wilcox sold his interest to Caldwell.
Caldwell continued the business until 1860; and on
November 10, of that year he received his deed of Moore
on his purchase. Said deed purports to be for the con-

sideration of $2,500, and, after describing the land for the site of the factory, continuing, says:

"Together with the undivided one-eighth part of the land flowed, or subject to be flowed, by said pond, for which the parties of the first part have a title in fee-simple, together with the undivided one-eighth of all the interest the parties of the first part have in and to other lands now flowed by said pond; and it is understood and agreed by the parties that. if the undivided one-eighth of the Rock-river water-power, which is hereby intended to be conveyed, does not amount to 225 inches of water, then the party of the second part, his heirs and devisees, shall have the right to. use enough water from said pond to make 225 inches, or a stream of water filling an opening 15 inches square, and the same to be used under a head of eight feet, upon the above-described premises, according to the following provisions, that is to say: The parties of the first part, for themselves, their heirs and assigns, reserve a sufficient amount of water, properly used, to drive four run of French buhr millstones, with all necessary machinery, first; and the party of the second part, his heirs and assigns, is to have the next use of the water, to the amount above specified, together with a proper use of the river below the bridge for tail water. And it is mutually agreed that in case of a break in the dam, or in any necessary repairs to the same, the parties of the first part shall be to seven-eighths of the expense, and the party of the second part one-eighth, except when a break occurs and repairs are necessary below or at the head gates of the head race to the flouring-mill, or in or around any similar improvement to the said dam, or in or around the flume to the factory on the above-described premises, in which case the repairs are to be made by the parties owning the premises on which the break occurs or repairs are necessary.

"And it is further agreed by the parties that there shall be no unnecessary waste of water, and, in case of improvement of the remainder of the water-power, proper respect shall be paid to the same, by keeping head gates shut when the water is not wanted for propelling machinery, and the flume kept tight and the dam repaired, for safety and saving of water; and, in case of the party of the second part selling or disposing of the above-described premises and water-power, all parties, their heirs and

assigns, to whom such disposition or sale may be made, shall be bound by the foregoing covenants, stipulations, and agreements. And the parties of the first part reserve the right to raise the water in said pond two feet above the present height or level of the water.

"Together with, all and singular, the hereditaments and appurtenances thereunto belonging or in any wise appertaining, and the reversion and reversions, remainder or remainders, rents, issues, and profits thereof, and all the estate, right, title, interest, or demand whatsoever of the said parties of the first part, either in law or equity, of, in, and to the above-bargained premises, with the hereditaments and appurtenances; to have and to hold the said premises as above described, with the appurtenances, unto the said party of the second part, and to his heirs and assigns, forever."

The deed then continued to the close with the usual covenants of warranty.

Caldwell sold his interests under said deed to Cox & Throp during the same year, who leased the property for various purposes for some time, and subsequently allowed it to remain unused. The defendants purchased of Cox & Throp their interest in the west side water-power in 1881, for the purpose of operating the water-works in Three Rivers, and it is under this title the defendants claim the right to use the water from the river and pond necessary to operate their water-works; and it is their claim that there is sufficient water for that purpose, and also to operate four run of French buhr millstones at said flouring-mill of plaintiff, if the plaintiff should take no more than is necessary for that purpose, and running the necessary machinery. It is conceded the plaintiff owns the entire water-power, except such part thereof as passed to Caldwell by his deed from Moore.

It is claimed by plaintiff that a sufficient quantity of water was reserved in Caldwell's deed at all times to run the plaintiff's mill with four run of French buhr millstones, and the necessary machinery, as the same was

used under an eight-foot head in 1860,—the date of the deed to Caldwell,—before any right existed to use any water by defendants, and that plaintiff is not confined, in the use of the water, to the running of the millstones, but he is entitled to its use for any purpose, so long as he does not use more than the specified quantity; but he avers that he has been deprived of such use, and of a sufficient quantity to run his mill at all, a portion of the time, by the wrongful use which the defendants have made of the water, and brings this suit to recover his damage.

The defendants claim that their title is in fee, and absolute, to one-eighth of the entire power, and under no circumstances can the mill-owners have the prior use of any portion of the one-eighth of the water mentioned in Moore's deed to Caldwell; that it is made appurtenant to the land conveyed by the deed, and, inasmuch as it is not shown that the defendants have used more than the one-eighth of the power or water, the plaintiff must fail to recover. These several contentions and claims of the parties present the theories upon which the case was tried at the circuit. The plaintiff prevailed, and the defendants bring error.

The case was ably presented by learned counsel upon both sides, both upon the briefs and the arguments on the hearing, and my impressions at that time were decidedly against the defendants; and, upon a full and careful examination of the case, since then made, I am more than ever convinced that my impressions were correct.

The decision of the case depends entirely upon the proper construction of the several clauses of the deed given by Moore to Caldwell in 1860. In giving construction to the provisions of this deed, we must take into consideration the nature of the subject-matter of which

it treats, and to which it refers; the object to be accomplished by the contract; the situation of the parties; their familiarity with the location, and its surroundings, and the property and interests to be affected; their knowledge and ability to comprehend the business and its requirements, about which they were treating; and all the circumstances accompanying the negotiations and consummation of the agreements between them. And in the light of all these things the instrument should be read. The terms and conditions of the deed were fixed and agreed upon in the contract of 1858; and the circumstances and surroundings of the parties at that time are those which are proper for our consideration in giving construction to what the parties then did, and what they said in this conveyance.

Rock river is a small stream at Three Rivers, emptying into the St. Joseph river at that point.  Mr. Moore was one of the early settlers of that village, and owned whatever water-power the stream would furnish, and early erected this large flouring-mill upon its banks, and, to secure the power to run the mill, was obliged to build a dam for that purpose, which raised the waters seven or eight feet in the river, and enabled him, by means of a race, to conduct them from the pond created by the dam to his mill in quantities sufficient to operate four run of French buhr millstones, and the necessary machinery for that purpose, except in very dry seasons, when the stream was insufficient to give him the needed power. The greater portion of the seasons, however, there was considerably more water than was necessary to successfully operate the four run of stones. The mill and the power were very valuable. The capacity of the mill was 100 barrels per day, and over, and the mill was furnished with no means of operating it other than the water-power

mentioned. The mill and power have always been, and are now, chiefly valuable for manufacturing flour; and any decrease of the power impairs the capacity of the mill, and to that extent renders it less valuable. It is difficult to conceive that the owner of the property could be induced to enter into any arrangement by which the power to successfully operate the mill, with its four run of stones, would be lessened; but, if the position taken by counsel for defendants is correct, this is the very thing Mr. Moore did do in the deed he made to Caldwell. Evidently Mr. Moore did not understand such was the effect of what he had done, and no one appears to have thought such a thing had been done until the defendants claimed to have bought the Caldwell interest.

When Caldwell & Wilcox made their purchase, it was not for the purpose of establishing a large business in manufacturing, but to supply the local demand for doors, sash, and blinds in the Three Rivers community; and nothing appears in the record showing that the power they desired for their purposes exceeded that which the surplus water would give, after using all that was necessary at the mill for operating the four run of stones night and day. This was all that Moore could spare, and retain the usefulness and value of his mill and power; and this was, in all probability, as well known to Caldwell & Wilcox as to Moore. These facts, together with the other fact, that no one representing the Caldwell interest ever attempted to use more than the surplus water, except the defendants, are circumstances of very great significance in giving construction to this deed.

If it is necessary, in order to maintain the position assumed by counsel for the defendants in making the defense set up, that such an interpretation should be given to the language of this deed as would in its effect

impeach and shock the common sense and good judgment
of both Mr. Caldwell and Mr. Moore, I think we would
be justified in hesitating a long time before adopting such
position. Relying upon the interpretation given to the
deed by the parties themselves and their grantees until
the defendants purchased, and upon which they had all
acted, it appears that large and expensive improvements
had been made to the mill property until, at the time of
bringing this suit, the investment amounted to the sum
of about $125,000, and all of which was to the plaintiff's
advantage; and it further appears that the defendants
knew when they purchased the Caldwell interest that
plaintiff claimed the prior right to the use of the water
to the extent necessary to operate the four run of stones
at his mill, and that such had always been the construc-
tion of the deed in question, under which he claimed,
and conceded by defendants' grantors for more than 20
years; and that defendants bought with full knowledge
upon the subject, and that plaintiff would protect and
enforce his rights under the deed, as he claimed them,
without question from the owners of the Caldwell inter-
est. It is of no consequence whether the rights claimed
by plaintiff arose under an exception or a reservation, so
long as the intention of the parties to the instrument is
plain; and I think it is, in this case. *Cutler v. Tufts,* 3
Pick. 272; *Manufacturing Co. v. Whittier,* 10 N. H. 305;
*Hill v. Cutting,* 107 Mass. 597; *Bowman v. Wathen,* 2
McLean, 376. The consequences of a determination of
the questions raised between the parties are too import-
ant to be rested on technicalities. Whatever was intended
to be conveyed was conveyed; and a statement of that
intention, or whatever amounts to that, should be allowed
to control. *Ousby v. Jones,* 73 N. Y. 621; *Morrison v.
Wilson,* 30 Cal. 344; *Bobo v. Wolf,* 18 Ohio St. 466;
*Garland v. Hodsdon,* 46 Me. 511; 2 Devl. Deeds, §§ 836–

839; *Mathews v. Phelps*, 61 Mich. 332 (28 N. W. Rep. 108).

So far as the construction of this deed by the action and understanding of the parties is concerned, it seems to have been all in favor of the plaintiff.   I know it is claimed that the action and understandings referred to were principally with the tenants and employés of defendants' grantors, and that the testimony relating thereto was taken under the objection of defendants' counsel; but I think it was unobjectionable.   Landlords are presumed to know the amount of property leased, and that tenants are informed of the same and its appurtenances; and their dealing with the property and its use are usually known to the landlords, and both are presumed to be in his interest.   2 Devl. Deeds, § 851; *Truett v. Adams,* 66 Cal. 218 (5 Pac. Rep. 96); *Lovejoy v. Lovett,* 124 Mass. 270; *Lanman v. Crooker,* 97 Ind. 163.

Upon the language of the deed itself, I think the fair construction is that the plaintiff shall have the first right of use of water sufficient in amount to run his four run of French buhr millstones, and both night and day, if he chooses.   There is no restriction upon the time each day the flouring-mill may be run.   The deed first conveys to Caldwell an undivided one-eighth of the land flowed by the pond, or subject to be flowed by it, when Moore held the title in fee, together with an undivided eighth interest in such rights as Moore had in the other lands flowed by the pond; second, an undivided one-eighth of the Rock-river water-power, not exceeding 225 inches of water, under a head of 8 feet, and if the one-eighth failed to give that number of inches, then the deficit could be taken from the pond.   Said conveyance was, however, to be subject to the following reservation as to the use of the water:

1. Moore was to have at all times a sufficient quantity, when properly used, to operate four run of French buhr millstones, with all the necessary machinery.

2. Caldwell was to have the next use of water, to the amount above specified, together with proper use of the river below the bridge for "tail water."

It will be noticed that the Caldwell power was entitled to water from the pond to make up its supply, so long as there was enough left therein to supply both powers. Such I understand to be the meaning of the deed, when properly construed; and such, I have no doubt, was the intention of the parties when the deed was made. And there can be no question, I apprehend, but that the quantity Moore was entitled to at his mill in 1858 plaintiff is entitled to now. Whether the power could be increased or not, by raising the dam or otherwise, was a matter of no concern to Mr. Caldwell or his grantees. Mr. Moore and his grantees were only interested in that matter.

The rule that deeds are to be taken most strongly against the grantor only applies where its construction is doubtful. I have no doubt about the proper construction of the instrument under review. The law favors equities in giving construction to deeds, and in ascertaining their true meaning. *Blake v. Madigan*, 65 Me. 528; *Erickson v. Land & Iron Co.*, 50 Mich. 604 (16 N. W. Rep. 161).

In construing a deed, all of its parts must be taken into consideration, and the bearing of each upon the others should be properly regarded; and when the parties have, in the instrument itself, expressed the intention of any particular part, while it may modify the construction to be given to other parts of the instrument, it will not necessarily control such construction.

A conveyance of land does not pass a thing appurtenant thereto, when such thing is excepted or reserved from the operation of the conveyance; and the deed of

the undivided eighth of the land lying under the mill-pond, in this case, did not transfer the right to the water, or to the use of the same, which was reserved from the operation of the deed. I find nothing repugnant in the reservation in this deed to the grant therein made. The one-eighth of the water-power on Rock river was conveyed to Caldwell, but with the reservation I have mentioned. The fact of the grant and the reservation being contained in different clauses of the deed is of no consequence, where the intention is apparent upon the face of the instrument, or manifest from the circumstances under which it was made, that the grant was to be thus modified. The reservation once conceded, I can find no reason to question its extent. That is fixed by the quantity of water required to operate the four run of French buhr millstones, and the necessary machinery for that purpose, with the kind of wheels then in use in the mill, running the mill 24 hours each day. This amount of water was reserved to the plaintiff; and he could use that amount for running his flouring-mill, or for any other lawful purpose he chose. I do not think it would be reasonable to hold that the quantity of water reserved should be limited to the amount that was being used at the date of the deed. That should not be made a controlling circumstance, when the others are taken into consideration. It must have been then contemplated by the parties that the necessity for the use of the mill would increase as the county cleared up about it; that the grain crop would be constantly increasing; and as it was a merchant as well as a custom mill, when anything could be made in the business, it would, in all probability, be run to its fullest capacity, as now and always has been in such cases with a merchant mill. I think the circuit judge gave the right instructions upon this point.

I find nothing further needing consideration in the assignments of error, and the judgment should be affirmed.

CHAMPLIN, J., concurred with SHERWOOD, C. J.