## BAILEY v. WALTON et al.

A witness testifying that he knows about the value of pianos, that he had seen them bought and sold, and that he thought he knew the value of pianos, was competent to testify to the value of a particular piano.

Where in an action by the wife for the value of a piano sold under a judgment against the husband, the wife claimed that the piano had been bought by the husband to repay a loan made by her to him, and the husband testified that he borrowed money from his wife and used it in his business, and that he never gave her any other property on account thereof, the exclusion of evidence as to where the wife obtained money which went into certain real estate was proper, as it introduced a collateral matter.

The error, if any, in permitting a witness to testify over objection to a fact previously testified to in substance without objection, is not reversible.

.Where there was evidence that a piano was in good order and as good as when bought two years before, a question, asking the seller to state the value of the piano assuming that it had been kept in good condition, was not objectionable as assuming facts not proved.

Where there was evidence that a piano was in good order and as good as when bought two years before, the answer of a witness, fixing the value thereof on the assumption that it had been taken good care of and had not been subjected to extreme heat or cold and was in good condition, was not objectionable as based on assumptions not proved.

The question whether a witness, who testified to the value of a piano sold to a customer some two years before, had offered to sell to a third person the same kind of a piano for a less price, was inadmissible as raising a collateral issue.

In an action for the value of a piano wrongfully seized and sold under execution, a music teacher, who testified to her examination and use of the piano some two years prior to the seizure, was properly permitted to state whether at that time it was in good condition, as other evidence showed that it remained in good condition to the time of the seizure.

Where, in an action by the wife for the value of a piano sold under a judgment against the husband, the complaint alleged that the seizure was malicious and to oppress plaintiff and was supported by evidence, the argument of her counsel, that the officers went into plaintiff's home and in the absence of the husband, and without the wife's consent, took the piano, and that the jury could imagine her feelings when she saw the officers take the piano, made to influence the jury to give exemplary damages, was not outside the issues, since Civ. Code, § 2292, authorizes exemplary damages in an action for breach of obligation not arising from contract, where defendant has been guilty of oppression, fraud, or malice.

Where defendants, in an action for the wrongful seizure and sale of property to satisfy a judgment, were charged with oppression and malice, and there was evidence proving the charge, the court properly instructed the jury on exemplary damages.

A verdict supported by evidence will not be disturbed because of conflicting evidence; the jury being the exclusive judges of the weight of the evidence and the credibility of the witnesses.

Where, in an action for the wrongful seizure of property under an execution, the evidence showed that the property was worth from $300 to $350, and there was evidence justifying the award of exemplary damages, a verdict of $500 was not excessive.

(Opinion filed, Nov. 17, 1909.)

Appeal from Circuit Court, Day County. Hon. J. H. McCoy, Judge.

Action by May N. Bailey against Byron A. Walton and others. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Affirmed.

*Wells & Walton* and *Campbell & Taylor,* for appellants. *Sears & Potter,* for respondent.

CORSON, J. This is an appeal by the defendants from a judgment in favor of the plaintiff and order denying a new trial. The action was instituted by the plaintiff to recover the value of a piano alleged to have been seized by the defendants and sold upon a judgment recovered against G. O. Bailey, husband of the plaintiff. After alleging the taking and conversion of a piano valued in the complaint at $350, the plaintiff makes the following allegations: "That on said day the defendants wrongfully took said piano and converted the same to their own use. That the said piano was taken under the following circumstances of oppression and malice, to wit: That at said time the plaintiff was, and for a long time prior thereto had been, the wife of G. O. Bailey, and resided with her said husband in the city of Webster, S. D., and was engaged in the business of keeping house for the said G. O. Bailey, and was, and had been for a long time prior thereto, the mistress of his household in Webster, S. D.; said household consisted of plaintiff, the said G. O. Bailey, and their children. That the said household resided in their home in the city of Webster, where they had maintained their home and residence for many years. That on said day the defendant Phillip A. Gross, as sheriff of Day county, S. D., held in his hand a certain execution issued in a proceeding in which one Murphy was plaintiff and G. O. Bailey defendant, which execution commanded the said Phillip A. Gross, as sheriff, to levy upon property of the said G. O. Bailey for the purpose of satisfying the same. That the defendants Wells and Walton were at said time attorneys engaged in the practice of law in the said city of Webster, and had been the attorneys for the said Murphy in procuring the said judgment. That the said Phillip A. Gross, pretending to act under said writ of execution, but in violation of the terms thereof, and for the purpose of oppressing this plaintiff, and under the direction, counsel, and advice of the said Wells and Walton, well knowing

that the said piano was not the property of the said G. O. Bailey, but was solely the property of this plaintiff, entered the dwelling house aforesaid, in which the plaintiff was residing, and wherein she was the mistress of the family aforesaid, and without the consent of the plaintiff and against her will, did forcibly remove the said piano from the said dwelling house, and take the same into their possession maliciously and willfully, and well knowing that the same was not subject to levy under said execution, for the purpose of oppressing this plaintiff and for the purpose of causing her to contribute to the payment of said judgment against the said G. O. Bailey, and did thereby cause the plaintiff great shame, grief, annoyance, and mortification in having said piano taken from her, and did expose her to public shame and ridicule by the removal of the same from her house, and did then and there, as aforesaid, wrongfully take said piano and convert said piano to their own use. That the actual value of said piano was $350." And the plaintiff further alleges that she was damaged by the said wrongful and malicious acts of the defendants in the sum of $1,000, to wit: in the sum of $350, in the actual value of said piano, and the further sum of $650, exemplary damages on account of the said wrongful, malicious, and oppressive acts of the defendant, and demands judgment for the sum of $1,000.

The defendants in their answer denied all the allegations of the complaint, except that the plaintiff with her husband resided in the city of Webster; that Phillip Gross was the sheriff of Day county; that on the 22d day of June, 1907, he held an execution issued under proceedings in which one Murphy was plaintiff and George O. Bailey was defendant, which execution commanded him, as sheriff, to levy on the property of George O. Bailey for the purpose of satisfying the same; that the defendants Wells and Walton were, at that time, attorneys engaged in the practice of law, and were attorneys for said Murphy in procuring the said judgment. It is disclosed by the evidence that the piano levied upon and taken from the home of the plaintiff and her husband was claimed by her as her individual property, having, as she claimed, been bought by her husband for her with money previously loaned to him, which was to be repaid by him by the

purchase of a piano when she might desire him to do so; that on or about the 22d day of June, 1907, the defendant Gross, as sheriff, under the direction of the defendants Wells and Walton, entered into the home occupied by the plaintiff, and took therefrom the piano so claimed by her, and the same was afterwards sold under the execution, and at the sale bid in by Mr. Wells, one of the defendants.

George O. Bailey, the husband of the plaintiff, testified that he had a conversation with both Wells and Walton prior to June 22, 1907, in relation to the ownership of the piano, and told them that it belonged to his wife; that his wife's money bought it, which had been given her by her mother and loaned to him by her; that the statement made to them by him was one or two weeks before the levy on the piano. He further testified: "I think I know about the value of pianos. I have seen them bought and sold." He was then asked the following question: "State it (the value)." Objected to by the defendants on the ground that no foundation had been laid. The objection was overruled. His answer was "I think the instrument was well worth $350. It was a well-toned instrument, and nice looking, and the instrument was just as good when it went as when it came in. There was not a scratch on it. It was in good order. I was not present when it was taken." It is contended by the appellants that the court erred in overruling the defendants' objection; but we are of the opinion that the statement of the witness that he knew about the value of pianos, and that he had seen them bought and sold, and that he thought he knew the value of pianos, was sufficient foundation for permitting him to answer the question as to the value. The witness was not subjected to any cross-examination, and prima facie his statements were sufficient to entitle his opinion of the value to be admitted in evidence.

The witness on cross-examination testified: "I borrowed the money in the fall of 1902, and I put it into my business. I used it right away. I built my house here the same summer that we bought the instrument, 1904. I never gave my wife any other property on account of the money that I borrowed from her in the summer of 1902. I did not give her the house and lot in Web-

ster. It is in her name. The money that built the house came
from the house she owned in Wheaton, Minn." The witness was
then asked the following question: "Where did she get the
money that went into the house in Minnesota?" which question
was objected to as incompetent, irrelevant, and immaterial, and the
objection was sustained. It is contended by the appellants that
the court erred in sustaining the plaintiff's objection to this ques-
tion; but we are of the opinion that the objection was properly
sustained, as the question was clearly immaterial to the issue in
this case, as the ownership of the homestead property was not
involved, and it tended to introduce into the case a collateral mat-
ter not pertinent to the issues in controversy in this case, and
was altogether too remote to shed any light upon the transaction
then being investigated.

The plaintiff, being called as a witness, testified to substan-
tially the same state of facts in regard to the purchase of the piano,
and that it was purchased in repayment of the money loaned
by her to her husband, and in the course of her testimony she
stated that the piano was purchased of one Mr. Ainsworth, a
music dealer doing business in the city of Webster, and she was
thereupon asked the following question: "Q. When you bought
this instrument, or during the negotiations or talk you had with
Mr. Ainsworth, did you explain to him how this instrument was
being bought?" this was objected to as immaterial, and the
objection overruled. "A. I told him it was my mother's money
that was buying the piano." It is contended by the appellants
that this conversation between the plaintiff and Ainsworth was
inadmissible, not being in the presence of either of the defendants,
and therefore that the court erred in overruling the objection to
the same. As the plaintiff had previously testified that when she
purchased the piano it was talked over with Ainsworth that the
purchase was in pursuance of an agreement to pay back the
$300 loaned by her to her husband, which evidence went in with-
out objection, it was not error therefore to permit her to repeat
in response to the question, the statement which had already in
effect been made, and, even assuming that the court erred in over-
ruling the objection, it cannot be regarded as reversible error.

Ainsworth, from whom the piano was purchased was asked the following question: "Q. What was the value of this piano assuming that it had been kept in good condition and had been used there in the Bailey family about two years, what would be its value?" The question was objected to for the reason that it assumed facts not proven. The objection was overruled, and we think properly so, for the reason that both the plaintiff and her husband had testified as to its conditon, and the counsel were therefore clearly in error in stating that facts were assumed not in evidence. The witness answered the question as follows: "A. Well, if the piano was taken good care of, and not subject to extreme heat or cold or frost so that it fiercely checked it, rusted the strings, and it was all right, and in good condition in these respects, the piano ought not to depreciate over $25." Defendants' counsel then moved the court to strike out the answer for the reason that the answer is based upon assumptions and conditions not appearing in the record. This motion was also overruled, and the witness continued: "This piano ought to be worth from $300 to $325. I sold this piano and delivered it up to the house. At the time of the transaction, I met Mrs. Bailey a number of times. She came down and examined the piano before it was delivered." It is contended by the appellants that the motion to strike out should have been sustained for the reason that there were numerous conditions stated by the witness which were not shown to have been complied with. We think that, in effect, the testimony of the plaintiff and her husband covered these conditions, for, if defects in any of the respects suggested by the witness as conditions on which to base his testimony existed, then the piano was not in good condition and as good as when it was taken into the house when sold by Ainsworth and delivered.

On cross-examination witness Ainsworth was asked the following question: "Q. Now, Mr. Ainsworth, did you not, about the month of December, 1907, in Webster, S. D., offer to Mr. Walton a piano which you then said was of the same make and kind as the one you had sold to Mr. Bailey, for $200, or thereabouts?" This question was objected to, and the objection sustained. The appellants now contend that the court erred in sus-

taining the plaintiff's objection to this question. The court's rul-
ing was clearly correct. The price at which a party might be
willing to sell a piano constitutes no criterion of its value, and
there may be many reasons why a party would offer to sell prop-
erty for less than its value, and the question, it will be noticed,
does not assume the piano to have in fact been one of the same
kind and make as the one in controversy, but merely that Ains-
worth said it was. This evidence, if admitted, would raise a col-
lateral issue entirely irrelevant and immaterial in this case, for the
question might then be raised as to whether or not Mr. Ains-
worth's statement in regard to the piano offered by him was true
or untrue, and hence such an issue would be entirely foreign to
the issue raised in this case, which was as to the value of the
piano involved in this action, and not of any other piano that
the witness might have offered to sell.

A witness on behalf of the plaintiff, who testified that she
was a music-teacher, was asked the following question: "Q. You
may tell the jury whether, so far as you observed at the time, it
was not in good condition or good state of repairs." This ques-
tion was objected to as immaterial and not connected with the
time of the taking. The objection was overruled, and this is
assigned as error. The witness had testified that her examina-
tion and use of the piano had been some two years previous to
the time the same was seized by the sheriff. We are of the
opinion that the evidence was properly admitted, as other evi-
dence was introduced on the part of the plaintiff tending to prove
that the piano remained in good condition up to the time it was
levied on by the sheriff.

It is further contended by the appellants that a new trial
should be granted on the ground of the misconduct of one of the
counsel on the part of the respondent in his argument to the jury.
It is disclosed by the record that, during the argument, counsel for
respondent made the following statement: "This sheriff and his
deputy went into the home of Mrs. Bailey without invitation, and
in the absence of her husband, and without her consent and against
her will took this piano. Imagine her feelings when she came
down the stairs and saw these men taking this piano and the

children crying." Thereupon it was objected by counsel for the appellants that the argument was not within the issues of the case, as the action is not for injury to the feelings, and asked that the statement of the gentlemen be taken down, and entered an exception. Counsel continued his argument as follows: "I make this argument for the purpose of showing you the manner in which this operation was performed upon the plaintiff, and, gentlemen, I make this for the purpose of influencing you to a certain extent in giving us exemplary damages. He claims we have not shown we were entitled to any exemplary damages, and we are trying to show you the malice. We are trying to show you that, notwithstanding these conditions I have just depicted to you, they maliciously took that piano out of their house." We are of the opinion that his line of argument was fully justified under the pleadings and evidence. It will be observed by the paragraph of the complaint quoted in this opinion that the defendants were directly charged with taking possession of the piano "maliciously and willfully, and well knowing that the same was not subject to levy under the execution, for the purpose of oppressing the plaintiff, and for the purpose of causing her to contribute to the payment of the said judgment against the said G. O. Bailey, and did thereby cause the plaintiff great shame, grief, annoyance, and mortification in having said piano taken from her, and did expose her to public shame and ridicule by the removal of the same from her house." It will thus be seen that the argument of counsel was proper under the allegations of the complaint, and we are of the opinion that there was evidence from which the jury might draw the inference that the defendants were guilty of "oppression, fraud, or malice, actual or presumed." Section 2292 of the Civil Code provides: "In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." The argument of counsel therefore was in strict accord with the respondent's theory of the case.

It is further contended by the appellants that the court erred

in the following part of its charge to the jury: "And the court further instructs the jury that in case you find a verdict in favor of the plaintiff, and the jury further believe from a preponderance of the evidence that the defendants in and about the taking of said piano were guilty of oppression or malice, actual or presumed —that is, with a wrongful intention to oppress, harrass, vex, or annoy plaintiff—then, and under such circumstances, the jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendants; and damages of this character are called 'exemplary damages.' And, in case you find that plaintiff is entitled to exemplary damages, the jury should allow the plaintiff, in addition to actual damages, such further damages, by way of punishment to defendants, and to prevent others from like offenses, as the jury in the exercise of good judgment thinks defendants should pay, and plaintiff ought to receive, not exceeding the sum of $650, the amount claimed in the complaint." It is not claimed by the appellants that the court in this part of its charge did not state the law correctly as applied to exemplary damages; but they insist that there was no evidence upon which the charge could be based. This contention is, in our opinion, untenable. As we have seen, the issue as to the defendants being guilty of "oppression, fraud, or malice, actual or presumed," was presented by the pleadings, and in our opinion there was evidence on the part of the plaintiff tending to prove the allegations of the complaint. Clearly therefore, under the provisions of our Code above quoted, it was the duty of the court to state to the jury the law bearing upon that issue, and the court therefore committed no error in its instructions to the jury upon this subject. Our attention has been called to the case of Baxter v. Campbell, 17 S. D. 475, 97 N. W. 386, which appellants claim sustain their position that the court erred in submitting the question as to exemplary damages to the jury; but the law as laid down in that case is not applicable to the case at bar. That was an action against a surgeon for negligence in treating the plaintiff for an injury received by him, and in the complaint there was no allegation that the defendant was guilty of "oppression, fraud, or malice, actual or presumed," and no evidence was intro-

duced tending to sustain any such claim. The court, however, in
its charge to the jury, of its own motion instructed them as to
what constituted exemplary damages. This court, in discussing
this instruction, says: "Under the pleadings and the proof, there
was nothing to warrant exemplary damages, and it was erroneous
to give an instruction upon so dangerous a proposition not in the
case. * * * The complaint was drawn strictly upon the
theory of compensation, and at no time during the trial was there
an intimation that anything more would be claimed. When ex-
emplary damages are predicated upon malice, the defendant is
entitled to know from the complaint what acts, omissions, or
circumstances are relied upon to constitute the gravamen of the
charge, and the instructions of the court should be confined to the
case as made by the evidence." In the case at bar, however, the
facts and circumstances constituting the "oppression, fraud, or
malice, actual or presumed," is fully and clearly stated in the
pleadings, and, as we have seen, it was contended on the trial and
in the argument of counsel that the plaintiff was entitled to ex-
emplary damages, and hence the instruction of the court in the
case at bar was proper.

It is further contended by the appellants that the evidence
was insufficient to justify the verdict, and therefore a new trial
should be granted for that reason; but we are of the opinion that,
if the jury believe the evidence introduced on the part of the
plaintiff, notwithstanding it was controverted by the defendants,
it was sufficient to sustain their verdict, as the jury was the ex-
clusive judge of the weight to be given to the evidence and as to
the credibility of the witnesses.

It is further contended by the appellants that the verdict is
excessive in amount; but in our view of the case this contention
is untenable. The verdict returned by the jury was for the sum
of $500, and, as the evidence on the part of the plaintiff tended to
prove that the piano was of the value of from $300 to $350, the
amount of the exemplary damages included in the verdict could
not have exceeded $150 or $200. Certainly, if the jury believed
from the evidence, as their verdict would indicate that they did,
that the defendants were guilty of "oppression, fraud, or malice,

actual or presumed," the sum included in the verdict as exemplary damages was not excessive, and the verdict for that sum cannot properly be reversed by this court.

Finding no error in the record, the judgment of the court below, and order denying a new trial, are affirmed.

McCOY, J., taking no part in the decision.